No. 14,289.

## W. J. HUGHES vs. BOARD OF COMMISSIONERS OF THE CADDO LEVEE DISTRICT.

### SYLLABUS.

1. In Section 2448 of the Revised Statutes, the General Assembly has thought proper to place a limitation upon the powers of police juries and city authorities, which it has not deemed necessary or proper to extend to levee boards. The limitation must be imposed by the legislature, not the courts.

2. A levee district is a State local benefit tax or assessment district, which the General Assembly has authority to confer rights and powers upon and to charge with duties which it has not itself. (State ex rel. Orr vs. City of New Orleans, 50 Ann. 886.)

APPEAL from the First Judicial District, Parish of Caddo—Land, J.

---

The plaintiff alleged that in August, 1895, the defendant board entered into a contract for the building and construction of a levee known as the Wilderness Levee, within the limits of their levee district, on terms and conditions shown by the contract, a copy of which he annexed to his petition.

That the contract was complied with by Ivey; that the contract was executed under the supervision of one of the State Board of Engineers

and the special commissioner of the Caddo Levee District, and when finished it was inspected and accepted by the board.

That on estimates made of the work by the said State engineer furnished the board by him, it had issued to Ivey certain warrants or certificates, evidence of indebtedness under the contract, issued by the board on account of said contract, and that plaintiff was the holder of a number of these warrants or certificates, amounting to ten thousand five hundred and thirty-eight dollars and twenty cents, which he described, which had been transferred to him by Ivey, who, by written act, subrogated him to the extent of the amount of the warrants to his rights, the warrants bearing interest at eight per cent., as stipulated in the contract.

He prayed for judgment for the amount of the certificates, with interest.

Defendant, reserving the right to contest the validity and legality of the contract, excepted to plaintiff's petition, on the ground that it could not be sued for portions of a debt which might be due by it; that no partial assignee can bring suit against it for a portion of a debt which might be due by it.

Under reservation it answered, pleading, first, the general issue. Further answering, it admitted the making of the contract referred to, but averred that the same was null and void for the reason that the board had no power or authority to make the same; that it was *ultra vires* and not binding on the board.

That if it had the lawful right to make it, it was null and void, for the reason that the means of paying the principal and interest of the debt contracted, were not provided for, either by resolution of the board. or by the contract, as required by law, and that the means of paying said indebtedness stated in the resolution of the board, viz., "Payments to be made in certificates of indebtedness payable out of the first surplus of resources of the Caddo Levee District Board, after the liquidation of the indebtedness of the board to date (August 6, 1895), said certificates to bear eight per cent. per annum interest," was illegal, null and void, for the reason that all the resources and revenues of said board had been previously appropriated and set apart by Section 13 and other sections of Act No. 74 of 1882, creating said levee district, for the purpose of paying the principal and interest on bonds to the amount of $200,000 issued by said district, under Section 10 of said act, which said bonds were issued for said amount prior to the making

of said contract with Ivey, and which said bonds were not yet due and payable, and that said provision for the payment of said indebtedness was uncertain, vague, general and indefinite.

That prior to the said contract with Ivey, defendant had pledged the revenues for 1895 and 1896 to pay an indebtedness to John Scott & Son for $22,964, and had pledged the revenues of 1897 and all subsequent years to pay an indebtedness to Bobbet, Lanan & Co. for $31,402, but defendant did not admit that said mentioned contracts were binding on the board.

That at the date of the Ivey contract the board did not possess resources and revenues that had not already been pledged, and that Ivey knew or could easily have ascertained said fact, and that the amount of said contract was excessive, exorbitant, and largely in excess of the just value of the work done, and that defendant had offered to pay plaintiff what was justly due on a *quantum meruit,* with interest thereon, which was refused. That the board had no legal right to issue the warrants. The District Court rendered judgment in favor of the plaintiff according to his prayer, and the defendant appealed.

*Holbert & Barret,* for Plaintiff, Appellee.

*David Thompson Land* and *Thomas Fletcher Bell,* for Defendant, Appellant.

The opinion of the court was delivered by

NICHOLLS, C. J. The Caddo Levee District was created by Act No. 74 of 1892, and a Board of Commissioners authorized to be appointed to take charge of its affairs. By Section 4 of the act the board was authorized " to make and execute contracts and to do and perform any and all acts necessary to carry out the objects of this act, viz.: The thorough and perfect protection of the lands of this district from damage by flood."

It was made the duty of the board to devise and carry into effect a comprehensive levee system, having for its object perfect protection of the entire district from overflow; to determine in what manner work shall be undertaken, and to provide means to carry out the recommendations of the Board of Engineers; *"provided,* that all work be advertised to be let out to the lowest responsible bidder, save in cases of emergency." (Section 5.)

For the purpose of providing means to carry out the objects of the act the board was empowered to levy a ten-mill district levee tax, a local assessment not exceeding five cents for every acre of land in the district, and a local assessment not exceeding fifty cents per bale on all cotton raised in the district. (Sections 7-8.)

As an "additional means" to carry out the purpose of the act, the State made provision for the granting to the board all lands belonging to or that might thereafter belong to the State, "and embraced within the limits of the district." (Section 10.)

And for the purpose of raising "further additional funds" for the said district the board was empowered to issue and negotiate bonds to the amount of $200,000. (Section 10.) The interest on these bonds was made payable out of the ten-mill tax. After twenty years the excess of this tax was to go into the sinking fund.

The board had until 1912 at its disposal the proceeds of the acreage and cotton taxes, and the sales of lands, and any excess of the ten-mill tax over and above interest on the bonds.

The work contracted for is admitted to form part of the levee district of the district, and the contract between the board and Ivey was entered into in good faith by all parties under the belief and conviction that it was authorized by the law. It is not pretended that the contract was not fully and properly performed by the contractor.

The contract was made pursuant to the resolution of the defendant board providing that payment be made "in certificates of indebtedness payable out of the first surplus of revenues of the Caddo Levee Board, after the liquidation of the indebtedness of the board to date, said certificates to bear eight per cent. interest per annum."

At the date of the Ivey contract, in August, 1895, the board owed John Scott & Sons $22,964 for levee work, payable out of the revenues of 1895 and 1896, and Bobbett and Lanan $31,402, payable out of the revenues of 1897 and subsequent years. The board had issued $200,000 of bonds under Act 74 of 1892, maturing in 1922.

In 1900 the General Assembly by Act No. 142 of that year authorized the defendant board to issue and negotiate bonds to the extent of $100,000 for the purpose of raising additional funds to carry out the objects contemplated by Act No. 74 of 1892, and to fund the unbonded indebtedness of the Caddo Levee District. Section 2 of said act reads as follows: "That the board shall have the right to negotiate said bonds at a rate of discount, including commissions, not to exceed 10

per cent. and to exchange said bonds for the interest-bearing 'warrants' heretofore issued by the said board on the best terms possible, at the discretion of the board."

These bonds were issued and sold above par. At the date of the judgment in the case at bar, all the outstanding warrants except those sued upon had been paid by compromise settlements. The plaintiff claims, therefore, that his warrants have become due and prays judgment for their full value and interest. The president of the board testified that the sale of lands amounts to between $50,000 and $75,000. The current expenses for 1895 and 1896 show a surplus after payment of interest on the bonds. The revenues for 1897 and subsequent years are not shown.

The plaintiff sues not only upon the certificates or warrants, but upon the contract made with Ivey under a partial transfer, with subrogation, using the certificates as evidence. The contract itself contemplated and provided for a breaking or dividing up of the indebtedness to be created thereunder in instalments. The district judge has considered and disposed of the various objections raised by the defendant in an able opinion, and from his concise statement of acts we have quoted freely.

Referring to the claim made by the defendant that the word of the contract to the effect that the certificates were to be payable out of the first surplus revenues of the board, after the liquidation of the indebtedness of the board to date (August, 1895), postponed payment of the certificates until not only all outstanding warrants, but also all outstanding bonds which had been issued, should have been paid, he very correctly declared that "it was not to be presumed that the parties contemplated the bonds as a part of this indebtedness, but referred simply to the outstanding levee warrants issued to the contractors already named, and for which the revenues of 1895, 1896 and 1897 and subsequent years had been pledged."

In disposing of the contention of the defendant that the contract was null and void because the board did not legally provide for and had no means wherewith to pay the debt arising from the contract in accordance with Section 2448 of the Revised Statutes, and did not comply with Act 30 of 1877, the court said:

"A mere perusal of the section (Section 2448) shows that it only applies to the police juries and constituted authorities of cities and towns. Act 30 of 1877 only applies to municipal corporations and

police juries. A levee district is a mere functionary of the State (Peart vs. Levee District, 45 Ann. 425), one of the instrumentalities which the General Assembly may use in performing its duty of maintaining a levee system in the State (Egan vs. Hart, 45 Ann. 1362). The Board of State Engineers act in conjunction with the District Levee Commissioners, surveys and locates all levees, determines what repairs and changes shall be made, what streams shall be opened or closed and how the State engineers' fund (provided by the State,) apportioned to the district, shall be expended."

"Section 5 of Act No. 74 of 1892 makes it the duty of the board ' to provide the means to carry out the recommendation of the Board of Engineers.' "

"In the nature of things, the General Assembly could not anticipate the cost of the original construction of the levee system in the Caddo Levee District, hence no limit of expenditures was fixed. The bond issue was authorized ' for the purpose of raising additional funds.' The amount to be expended was left to the discretion of the board subject to the recommendation of the State engineers. We find in the act no provision for annual appropriations and annual benefits, and no restrictions on annual expenditures. The board was not required to pass ordinances providing the means of paying the principal and interest of debts contracted for levee construction and repair. Its duty was simply to *provide means* to carry out the recommendations of the State engineer. For this purpose the board was vested with power of taxation and was granted lands and also the authority to issue bonds. The act of 1900 authorized the board to issue $100,000 in bonds to carry out the objects of Act No. 74 of 1892, and to fund its unsecured indebtedness and its interest-bearing warrants. It cannot be questioned but that the warrants sued on were among those contemplated by the act of the legislature. The main purpose of the act was to provide the means of paying the warrants issued by the board for levee construction and repair, amounting to some $75,000. The board has recently sold lands to an amount from $50,000 to $75,000, and has also sold the bonds for some $112,000; hence the legislature itself has provided the means of paying the warrants sued on as all other outstanding warrants issued by the board. The board had until 1912 at its disposal the proceeds of the acreage and cotton taxes and the sale of lands, and any excess of the ten-mill tax over and above interest on the bonds; therefore, the contention that the board had no power to contract because all of the

revenues had been pledged to the payment of the bonds is without force. The case comes squarely within the doctrine announced in Hitchcock vs. Galveston, 96 U. S. 341, and Cole vs. City of Shreveport, 41 Ann. 839."

"It is argued that as the State itself is prohibited from contracting debts the legislature was without power to authorize the contracting of debts by State Levee Boards. If this argument is sound, it strikes at the constitutionality of all the acts of the legislature authorizing such boards to issue bonds and contract debts. As the board has not pleaded the unconstitutionality of Act No. 74 of 1892, it is unnecessary for the court to notice the contention further. (State vs. St. Romes, 26 Ann. 754.)"

"The only difference between plaintiff and defendant in this case, is that the former demands payment according to the contract, while the latter offers to pay on a *quantum meruit*. The contract price was unquestionably much higher than the cash value of the work, but the work was not let out on a cash basis, but on a long term of credit and conditional on the prior payment of the other creditors out of the resources of the board. Plaintiff sues on a contract and cannot recover on a *quantum meruit*."

"That the contract price argued upon was higher than what it would have been on a cash basis or on a *quantum meruit*, is irrelevant and is no defense to the action. There is no lesion in personal contracts. There is no middle ground between the allowance or the rejection of plaintiff's demand. The contract was made and executed in good faith, and if it be a lawful contract it should be enforced according to its tenor. The work was authorized by law and the defendant having received it, and it standing to-day as part of the levee system of the district, the district should pay in acordance with the terms of the contract."

We are of the opinion that the conclusion reached by the District Court is correct. Section 2448 of the Revised Statutes upon which defendant relies is in these words:

"The police juries of the several parishes and the constituted authorities of incorporated towns and cities in this State shall not hereafter have power to contract any debt or pecuniary liability without fully providing in the ordinance creating the debt, the means of paying the principal and interest of the debt so created."

The General Assembly has thought proper to place a limitation upon

the powers of police juries and city authorities which it has not deemed necessary or proper to extend to levee boards. The limitation must be imposed by the legislature, not the courts. A levee district is a State local benefit tax or assessment district, upon which the General Assembly has authority to confer rights and powers and to charge with duties which it may not be authorized sometimes itself to perform. In State ex rel. Orr vs. City of New Orleans, 50 Ann. 886, this court said: "The position taken that there is manifest inconsistency between prohibiting the legislature from taking action upon some particular matter, and yet authorizing it either to permit subordinate corporations to do so, or to authorize it to charge them with the duty of doing so, is not logically correct. For instance, there may be certain duties, the performance of which from their character could and should be executed in certain localities for the public good, the expenses of which should be made to be contributed to by the people of that special locality. While the people of the State at large might have an interest in seeing these duties performed, and they should, through the legislature, have control over them to some extent, it might be very unfair and improper to cast a general burden upon the State in respect to the same upon the whole people."

"Different localities should be made to bear exclusively the burden to the extent that they were specially and directly concerned in the subject-matter. * * * In doing this the Constitution would have simply shifted the burden of the duty from the State at large to the people of particular places."

In this matter of expenses incurred for levee purposes the State contributes a part by general taxation, the balance being made up by the people specially concerned therein.

It is not pretended that the building of this particular levee was not called for at the time by the exigencies of the situation, nor that the contract for the same was not awarded after due observance of all legal formalities. It is simply urged that the bid made and accepted was too high. The proper time to have raised and acted on that objection was when the bid was accepted, and before the work was done. As matters stand the defendant board has under its control, utterly untrammeled as to demands upon it, moneys sufficient to pay plaintiff's claim. We see no reason in law, and certainly none in equity, why the plaintiff should not be paid. The judgment appealed from is correct and it is hereby affirmed.

Rehearing refused.