182 So. 551

HINKLE et al. v. McGUIRE et al.

No. 34399.

May 30, 1938.

Rehearing Denied July 1, 1938.

.Sholars & Gunby and G. Allen Kimball, all of Monroe, for appellants.

Hudson, Potts, Bernstein & Snellings, of Monroe, for appellees.

O'NIELL, Chief Justice.

The purpose of this suit is to subject four lots, fronting on the west side of Trenton street, in the city of West Monroe, to a lien for a street-paving assessment. The assessment was levied upon a narrow strip of land on the east side of the street, opposite the four lots, and between the street and the Ouachita river. The plaintiffs, appellants, are the city of West Monroe and E. G. Hinkle, to whom the alleged lien was assigned. The claim is not represented by a certificate of indebtedness or promissory note. The de-

fendants, appellees, are Mrs. L. C. McGuire and the Monroe Building and Loan Association. Mrs. McGuire owned the four lots on the west side of Trenton street, as well as the narrow strip of land opposite the four lots, between the street and the river, when the street-paving project was commenced and for nearly three years after the work was completed and the assessments were levied. The building and loan association afterwards, on June 14, 1929, acquired a mortgage and vendor's lien on Mrs. McGuire's four lots on the west side of Trenton street, and, on January 25, 1932, bought the four lots at a sheriff's sale, in foreclosure of the mortgage and vendor's lien.

The amount in contest—for which the plaintiffs are proceeding in rem to enforce the alleged lien—is less than $2,000. The appeal comes to this court by reason of the provision in the 5th paragraph of section 10 of article 7 of the Constitution, that the supreme court shall have appellate jurisdiction in all cases in which the constitutionality or legality of a tax or local improvement assessment is contested. In this case the defendants, appellees, contest the constitutionality and legality of the assessment, so far as it is sought to be imposed upon the four lots on the west side of Trenton street; and they contest the constitutionality and legality of the ordinance, No. 828, levying the assessment, and the constitutionality of Act No. 288 of 1928, under authority of which the ordinance was enacted—as construed by the plaintiffs in this suit.

Act No. 288, of 1928, according to its title and its text, provides an additional method by which a municipal corporation (except New Orleans) having a population exceeding 1,000, or being a parish seat, may pave or otherwise improve a street bordering upon or in close proximity to a stream or canal, by levying an assessment and creating a lien upon the property abutting on the side of the street farthest from the stream or canal, to defray the cost of the work. Section 1 of the act provides that, in such cases, where the property between the street and the stream or canal is not of sufficient value to warrant the imposition of a paving assessment under existing laws, and is in fact worth less than its proportionate share of the cost of the proposed paving, the municipal council shall have the authority, in addition to all such authority as is conferred upon the council by other laws, to pave or otherwise improve the street, for a distance not less than one block, and to levy and collect a special tax or local assessment against the property abutting on the side of the street farthest from the stream or canal; provided that the owners of not less than sixty per cent of the front-footage of the property abutting on that side of the street shall petition therefor, in writing, and shall express in writing their opinion that the property between the street and the stream or canal is not of sufficient value to warrant its being assessed for the paving under existing laws; and provided further that, on such a petition and expression of opinion, the property on both sides of the street may be

assessed for the cost of the paving "as now provided by existing laws", and, if the property between the street and the stream or canal "should not be bid in at Sheriff's sale in foreclosure of such paving assessment for an amount sufficient to pay the assessment against it, then, and in that event, the entire cost shall be paid by the owners of the property on the side of said street farthest from said stream, or canal." The statute provides that, in that event, the municipality or its transferee shall have a lien on the property on the side of the street farthest from the stream or canal. Section 2 of the act provides that if there is a railroad bed on the street the railroad company shall pay the proportion of the cost of the paving that the area of the railroad bed bears to the total area of the pavement. Section 3 provides that the municipality shall pay the proportion of the cost of the work that the area of the street intersections bears to the total area of the pavement. And section 4 provides that the abutting property owners shall pay the balance of the cost of the paving according to the front-foot rule—provided that the entire cost, except as stipulated in sections 2 and 3, shall be paid by the owners of the property abutting on the side of the street farthest from the stream or canal. Section 5 provides for the making of the plans and specifications and the letting of the contract to the lowest responsible bidder. Section 6 provides that, on satisfactory completion of the work, the municipal council shall accept the work, by an ordinance or resolution, and assess, as provided in the act, all abutting property and railroad beds,

for the amount due by the owners thereof, according to the rules of apportionment adopted, and as stipulated in the act. It is declared in this section of the act that a certified copy of the ordinance levying the assessment shall be filed for record in the mortgage office within ten days, and when so filed and recorded shall create a lien in favor of the municipality and its transferees against the property assessed, which shall rank all other liens except tax liens. Section 7 of the act provides that the amounts assessed shall be due immediately, and that if an assessment be not paid within ten days the municipality or its transferee may proceed by suit against the assessed property and the owner thereof to collect the amount, with 6 per cent interest and 10 per cent attorney's fees. Section 8 provides that a taxpayer may pay 10 per cent of the amount of his assessment in cash and the balance in 9 equal annual installments, represented by promissory notes. Section 9 allows the municipality to transfer the notes to the contractor, without recourse, and declares that any transferee shall have the benefit of the lien. Section 10, being the last section of the act, declares that it shall not repeal or modify any statute on the subject, but shall merely provide additional means by which municipalities may provide for paving or improving their streets.

Our interpretation of the statute is that it provides for two alternative methods of levying the assessment, according to the front-foot rule. If the owners of sixty per cent or more of the front-footage of property abutting on the side of the street

farthest from the stream or canal request it in their petition, the entire cost of the paving, less the deductions for the street intersections, and for the railroad bed if there be one, shall be assessed against the property abutting on the side of the street farthest from the stream or canal, according to the front-foot rule. The rule is well recognized and defined in the statutes on the subject of street paving. On the other hand, if the petitioners request it, the cost of the paving, less the deductions mentioned, shall be assessed equally against the property abutting on both sides of the street, according to the front-foot rule; but in that case, the assessment shall be so levied that each and every lot abutting on the side of the street farthest from the stream or canal shall be not only liable for the amount of the tax assessed against it, but also liable, contingently or secondarily, for the same amount for the tax assessed against the property on the opposite side of the street. If the assessment is to be distributed against the property abutting on both sides of the street, each and every separately-owned lot or piece of land abutting on the side of the street nearest to the stream or canal must be assessed for its share of the total cost of the paving, according to the front-foot rule, and each and every separately-owned lot or piece of land abutting on the side of the street farthest from the stream or canal must be so assessed as to disclose, not only its unconditional liability for the amount of the assessment against it, but also its contingent liability for a corresponding amount assessed against the property on the other side of the street.

Mrs. McGuire was one of the signers of the petition, asking the municipal council to pave Trenton street. The petitioners asked that the paving should be done according to the provisions of Act No. 288 of 1928. They expressed their opinion that the property between the street and the river was not of sufficient value to warrant its being assessed according to the other paving laws; hence the petitioners asked that the assessment should be levied against the property abutting on both sides of the street, and that, if the property between the street and the river should fail to bring a price sufficient to pay the assessment against it, at a sheriff's sale in foreclosure of the tax lien, then, and in that event, the entire cost of the paving should be paid by the owners of the property abutting on the side of the street farthest from the river.

On December 3, 1928, the municipal council adopted an ordinance, No. 814, ordering that the street should be paved, and directing the clerk of the council to advertise for bids according to the plans and specifications furnished by the city engineer. In due course the contract was awarded to J. L. Humble, and in the contract it was stipulated that paving certificates might be given in part payment for the work. Thereafter, the contractor assigned his interest in the contract to E. G. Hinkle, who is one of the plaintiffs in this suit. The work was completed and approved by the city engineer; and, on the 10th of May 1928, the municipal council adopted an ordinance, No. 828, accepting the paving and levying the assessments to

pay the cost. The total cost of the work, as reported by the city engineer, was $49,086.30. The city's portion of the cost was $5,288.11, for street intersections. The engineer reported that the total number of front feet of property abutting on both sides of the street was 9,130.95 feet, and that the rate at which the property on both sides of the street should be assessed to pay the balance of $43,798.19, was $4.2455856 per lineal foot.

Mrs. McGuire's property consisted of four adjoining tracts of land, fronting on the Ouachita River, and extending westward across Trenton street. Two of the tracts had a width of 100 feet each, and a depth of 400 feet, measured from the river. The third tract had a width of 14.80 feet, and the fourth tract a width of 76 feet and the depth of 268 feet, measured from the river. In the assessment of Mrs. McGuire's property, each one of the four tracts of land was assessed and described by its measurement along the river and its entire depth from the river back across Trenton street; and, thereafter, in the list of assessments, that part of each tract lying between the street and the river was assessed separately. The result was that the narrow strip of land on the east side of the street, between the street and the river, was included in the assessment of the lots on the west side of the street; but the lots on the west side of the street were not included in the subsequent assessments of the narrow strip on the east side of the street, between the street and the river. In the first assessments, describing the land on both sides of the street, the rate per front

foot was much higher than in the subsequent assessments of those portions of the land lying between the street and the river. For example, the tract of land first assessed, having a front of 100 feet on the river and extending westward across Trenton street to the depth of 400 feet, and measuring 102.15 feet on the street, was assessed for $538.08, which was at the rate of $5.2675 per foot. The tract next assessed, having exactly the same measurements, was assessed for $535.05, which was at the rate of $5.2378 per foot. The tract next assessed, extending from the river westward across Trenton street, and measuring 14.8 feet on the street was assessed for $73.93, which was at the rate of $4.9932 per foot. And the tract next described, measuring 75 feet on the river and extending westward across Trenton street to the depth of 268 feet, and measuring 76 feet on the street, was assessed for $405.13, which was at the rate of $5.4622 per foot. In the assessments of the portions of the four tracts lying between the street and the river, the two lots measuring each 100 feet along the river and extending westward to Trenton street, and having a front of 102 feet each on the east side of the street, were assessed for $433.05 each; and the lot measuring 14.80 feet on the east side of the street, extending from the road to the river was assessed at $62.83; and the tract measuring 75 feet along the river and fronting 76 feet on the east side of the road was assessed for $322.66; all of which assessments were at rates very near the rate that was determined by the city engineer. On the face of the figures, however, the rate at which the property on both sides of the street should

have been assessed is $4.7966739 per foot, because that is the result which we get by dividing the net cost to be paid by the property owners, $43,798.19, by the total number of front feet of property on both sides of the street, which is 9,130.95 feet. We have applied the adding machine to the assessments on both sides of the street, and find that the total number of feet is, as the engineer reports, 9,130.95 feet. We have added up also the amounts of the assessments and find that the total amount is $44,065.41. But, in the list of assessments we find one for $267.22, marked "duplication". Deducting this from the $44,065.41, we get the exact total which the engineer reported, $43,798.19. Hence, there is no error in either the total number of lineal feet on both sides of the street or in the total amount of the assessments, as reported by the engineer.

■ It is suggested in the brief of counsel for the appellant that perhaps the reason why the assessments of the four tracts of land extending on both sides of the street were made at higher rates than the rate at which the four tracts between the street and the river were assessed is that the curbing and gutters were all on the west side of the street, and that each lot on that side of the street was charged with the cost of the gutters and curbing in front of the lot. If the assessment was made in that way it was made in violation of the statute requiring the assessment to be made according to the front-foot rule. Barber Asphalt Paving Co. v. Watt, 51 La.Ann. 1345, 26 So. 70; S. D.

Moody & Co., Ltd. v. Spotorno, 112 La. 1008, 36 So. 836; City of Crowley v. Police Jury of Arcadia, 138 La. 488, 70 So. 487.

The irregularities in the assessments, however, are not so important as is the fact that the assessments against the property on the west side of the street, in which assessments the property between the street and the river was also included, were cancelled and erased from the mortgage record when the building and loan association bought these lots from Mrs. L. C. McGuire. She paid the 10% of the amount of these assessments in cash within ten days after the assessments were made, and gave four series of nine notes each to represent the nine annual installments in which the balance of the assessments were to be paid. These assessments and the liens securing them were the only assessments or liens recorded against the property on the west side of the street, which the building and loan association bought at the sheriff's sale on January 25, 1932. The mortgage certificate which was read aloud by the sheriff at the time of the sale disclosed that there was no other lien against the property which the building and loan association bought. Hence the title passed to the building and loan association free from any tax lien. The building and loan association paid in full all of the unpaid thirty six (36) notes; and the clerk of court, ex officio recorder, inscribed across the record of the four assessments of the lots which were adjudicated to the building and loan association, the cancellation of the liens, thus: "These four liens of Mrs. L. C. McGuire

are cancelled in full. See thirty-six (36) notes filed as vouchers, this 13th day of August, 1935. (signed) : I. H. Hamilton, .Dy. Clerk."

■ On the 9th day of May, 1932, the City of Monroe and E. G. Hinkle brought foreclosure proceedings against Mrs. L. C. McGuire, to enforce the tax liens against the four small tracts of land on the east side of the street, between the street and the river; and on the 2nd of July, 1932, the plaintiffs obtained judgments in rem, ordering these pieces of land sold by the sheriff to satisfy the liens, and declaring that, if these lots should not be sold for an amount sufficient to pay the assessments against them, the plaintiffs' right to proceed against the property directly opposite these small tracts, and on the opposite side of the street, should be reserved. No bid was received by the sheriff when he offered these river-side lots for sale. The plaintiffs afterwards seized one of these small lots under an alias writ of fi. fa. and advertised the lot for sale, and bought it in for $20.00, which was less than the amount of the court costs. The plaintiffs, therefore, in this suit, plead that the reservation of their right to proceed against the lots on the west side of the street, in the four judgments in rem, which they obtained against Mrs. L. C. McGuire on July 2, 1932, is res adjudicata, even against the Monroe Building and Loan Association. The plea is not well founded. In the first place, the reservation of the right to proceed against the property on the west side of the street was not the same as to say that the proceeding would result

in holding the property liable for the assessments against the property on the east side of the street. In the second place, the building and loan association was not a party to the suit in which the judgment in rem was rendered against Mrs. McGuire on July 2, 1932. The building and loan association acquired its mortgage and vendors lien on the property on the west side of the street on June 14, 1929, and bought the property at the sheriff's sale in foreclosure of the mortgage and vendor's lien on January 25, 1932; that is, before the four suits were instituted against Mrs. L. C. McGuire, to foreclose the liens on the property on the east side of the street,—between the street and the river.

■■ The plaintiffs plead also an estoppel against the defendants' complaining of the irregularity in the assessments, or complaining of the fact that there was no tax lien recorded against the property which was bought by the building and loan association, except that which the association paid at the time of the sheriff's sale. The estoppel is founded upon the fact that Mrs. McGuire signed the petition asking the city council to pave Trenton street and to levy the assessments according to Act No. 288 of 1928. As far as Mrs. McGuire is concerned, she is, like the City of West Monroe, in this case, only a nominal party to the suit. The plaintiffs are not asking for a personal judgment against either of the defendants, but are asking only for a judgment in rem. In fact there is no personal liability for paving assessments and liens, under any statute of this state, unless

the taxpayer issues a promissory note for the amount of the assessment. Town of De Ridder v. Lewis, 139 La. 903, 72 So. 447; Guaranty Mortgage & Securities Co. v. Millsaps, 178 La. 255, 151 So. 197. Act No. 219 of 1914 declares that a plea of estoppel shall never be allowed in matters of local or municipal assessments where there are radical defects in the proceedings leading up to such assessments, although such a plea may have effect against subsequent irregularities or informalities where no protest has been made by the party assessed. See Grasser Contracting Co. v. Richardson, 147 La. 612, 85 So. 609. It is a matter of no importance, however, whether a plea of estoppel should prevail against Mrs. McGuire, because she has no interest whatever in this suit.

Our conclusion is that the judgment of the District Court, rejecting the demands of the plaintiffs is correct. It is not necessary to consider the defendants' plea that Act No. 288 of 1928 is unconstitutional. The plea seems to be only an alternative plea, to the effect that if Section 7 of the statute purports to give the municipality the right to enforce a personal liability against the property owner, the statute is, to that extent, violative of Section 16 of Article 3 of the Constitution, which requires that every act of the Legislature shall have but one object and shall have a title indicative of its object. It does not appear to us that the provision of Section 7 of Act No. 288 of 1928 purports to impose a personal liability on the property owner for the amount of the assessment against his property. That is a matter of no importance here because the plaintiffs are not attempting to impose a personal liability upon either of the defendants.

The judgment appealed from is affirmed.

On Application for Rehearing.

PER CURIAM.

In his application for a rehearing the plaintiff complains of the statement made in the opinion rendered in this case, to the effect that the title to the property on the west side of Trenton Street passed to the building and loan association free from any tax lien, because the mortgage certificate which was read by the sheriff at the time of the sale disclosed that there was no other lien against the property than the tax lien which was paid when the building and loan association bought the property. The plaintiff construes this statement as meaning that a sheriff's sale will convey a title free from a recorded lien if the lien is not mentioned in the mortgage certificate read by the sheriff. What we intended to say was that there was no lien recorded against the property except the tax lien which the building and loan association paid at the time of the sale, as shown by the mortgage certificate which the sheriff read, etc.

With this explanation, the petition for a rehearing is denied.