PONDER, Justice.
 

 The question presented on this appeal is whether the defendant, the City of West Monroe, is liable for the balance due on a paving contract to plaintiff, E. G. Hinkle, as assignee of the contractor. The plaintiff in this suit seeks to recover from the defendant the sum of $17,335.16, representing the balance due on a paving contract together with court costs advanced by him and 10% attorney’s fees. The paving contract was let under the provisions of Act No. 288 of the General Assembly of this state for the year 1928. The defendant interposed a plea attacking the constitutionality of Act No. 288, a plea of prematurity, and exceptions of no right or cause of action. After the defendant filed an answer to the suit, the pleas and exceptions were submitted by consent of counsel in the lower court with the understanding that they would be passed on prior to the consideration of the case on its merits. The case was then submitted on an agreed
 
 *1081
 
 statement of facts and the testimony of the plaintiff. The pleas and exceptions were denied and overruled by the lower court, and judgment was given in favor of the plaintiff and against the defendant as prayed for. The defendant has appealed from this judgment.
 

 River Front or Trenton Street, hereinafter referred to as Trenton Street, in the City of West Monroe, runs in a northerly-southerly direction for a distance of eleven blocks, some 4,565 feet in length between its intersection with Vernon Street on the south and Claiborne street on the north. Between the easterly side of Trenton street and the steep or bluff bank of Ouachita River is a long narrow strip of ground of varying width, not exceeding approximately fifteen feet at any point. In 1928 the city and the owners of the property on the side of the street farthest from the river, hereinafter referred to as the west side of the street, being cognizant of the fact that the narrow strip on the river side of the street, hereinafter referred to as the east side of the street, was not worth its proportionate share of the cost of the paving, and of insufficient value to warrant the imposition of paving assessments under the then existing laws, secured the passage and enactment of Act No. 288 of 1928. This act provides an additional method by which a municipal corporation may pave a street bordering upon a stream by levying assessments and creating liens upon property on the side of the street farthest from the stream to defray the cost of the work. It provides that where the property on the side nearest to the stream is not of sufficient value to warrant the imposition of assessments under existing laws, being worth less than its proportionate share of the cost of the proposed paving, that the municipality shall have the authority to levy and collect the tax or assessment against the property abutting on the side of the street farthest from the stream on petition of property owners owning 60% of the front footage abutting the street on that side. In other words, the act provides for the payment of the entire cost of paving by owners of property abutting the street on the farthest side of the stream in event the property on the stream side is of insufficient value, when petitioned for in accordance with the act. The owners of the property of the required footage abutting Trenton street on the west side petitioned the governing authorities in conformity with Act No. 288 of 1928 and requested that the paving be done under the alternative method, viz., by imposing assessments on the property on both sides of the street with the imposition of liens on the lots on the west side of the street to secure the payment of the assessments on the east side of the street. The Mayor and the Board of Aldermen of the city adopted Ordinance No. 814 ordering the paving under the provisions of Act No. 288 of 1928. It was provided therein that the city was to pay for the paving of the street intersections and the balance of the cost of paving was to be assessed on the property abutting on both sides of the street by proration according to front footage. The property owners were given the option of paying one tenth of their assess
 
 *1083
 
 ments in cash and executing notes for the balance with interest at 6% per annum if they did not desire to pay the entire assessment in cash. The ordinance also provided that upon completion of the paving and the estimate of the cost by the engineer, after deducting the incidental expenses from the cash payments received from the property owners, the remaining cash, if any, together with the certificates of the property owners, be turned over to the contractor in payment of the amount due him. It provided that the city would assign its rights, liens, and privileges against the property and the owners thereof if the contractor so desired. After advertisement the paving contract was awarded to J. L. Humble. The work was completed and accepted by the city. The balance due the contractor as estimated was $44,446.30. The total cost of the work including the engineer’s fees and other incidental costs amounted to $49,086.30. The cost of the paving of the intersections of streets to be borne by the city amounted to $5,288.11 leaving a balance due the contractor of $43,798.19 to be assessed to the abutting property owners.
 

 The lots on the west side of the street were assessed in addition to the prorata cost of the paving by the lineal foot, the cost of the concrete curb and gutter in front ■of each lot as well as the individual cost of concrete driveway aprons where such led into the lots. There was no concrete curbing, gutters, or driveway aprons on the east side of the street and the assessments on this property were made on the basis of a prorata cost of the front footage for the street pavement alone, thereby making the assessments thereon considerably lower than the assessments on the opposite side of the street. Only one assessment was made on the property on the west side of the street and no provision was made to disclose that this property was liable for a corresponding amount assessed against the property on the east side of the street. In other words, there was nothing to show that the property on the west side of the street was contingently or secondarily liable for the amount assessed against the property on the east side of the street. The strip of land on the east side of Trenton street, between the street and the river, was appropriated by the Tensas Basin Levee Board in 1935 in its entirety and used as a base and site fór a concrete sea wall. The sea wall is now located about three to five feet from the edge of the paved portion of Trenton street. This strip of land had little, if any, merchantable value in 1928, at the inception of the paving proceedings, and by reason of the appropriation it is now out of commerce.
 

 The plaintiff furnished material and funds to the contractor in connection with the paving work and in satisfaction of this indebtedness the contractor assigned to the plaintiff all his interests in the contract. The contractor directed and authorized the city to pay the plaintiff all monies, considerations, and other things of value inuring to him under the contract. The city acknowledged the assignment and agreed to pay such to the plaintiff instead of the contractor.
 

 
 *1085
 
 All of the owners of the property on the west side of Trenton Street have either paid their assessments in cash or have availed themselves of the option by paying one tenth in cash and have executed notes for the balance except six of such property owners, who have failed and refused to make any payments or execute any notes therefor. The assessment against the six property owners who have refused to pay or execute notes therefor, amounts to $2,-091.65.
 

 Only eighteen of the property owners on the east side of the street have either- paid their assessments or availed themselves of the option. The notes executed by these eighteen property holders have been partially paid and there remains a balance due on them uncollected of $1,319.00. All of the remaining property holders on the east side of the street have refused to pay the assessment or execute any notes therefor.
 

 It is conceded that it was in the contemplation and understanding of all the parties to the paving project, including the plaintiff herein, that the strip of ground on the east side of the street was of insufficient value to warrant the imposition of paving liens against it and that the assessment levied against it would be secured by a legally enforceable lien and privilege on the property on the west side of the street.
 

 The city through its attorney instituted proceedings in an endeavor to secure the recognition and foreclosure of the delinquent paving assessments not represented by notes or certificates for the benefit of the plaintiff. A number of suits were filed resulting in judgments in rem against thfeproperty only and after the property was seized, advertised, and offered for sale by the sheriff no bids were received therefor. Other suits were filed in 1932 upon all the-remaining delinquent assessments, with a. few exceptions, resulting in judgments in rem and the portions of the land on the east side of the street were offered for sale without receiving any bids for them. The attorney for the city, being of the opinion that the requirements of Act No. 288 had' been sufficiently complied with to charge the lots on the west side of the street with liens to secure the payment of assessments, on the property on the east side of the-street, instituted suit against Mrs. L. C. McGuire who owned property abutting on both1 sides of the street, and her subsequent vendee of lots on the west side of the street,. Monroe Building and Loan Association,, seeking to have liens recognized and enforced against the lots on the west side to-secure the payment of assessments on the-property on the east side. The suit was dismissed on an exception of no cause of action.
 

 The plaintiff finally employed counsel and' instituted a new suit against Mrs. McGuire- and her vendee which resulted in a judgment rejecting the plaintiff’s demand. On-appeal to this court the judgment was affirmed. Hinkle v. McGuire, 190 La. 397, 182 So. 551. We reviewed therein the manner in which the assessment was made and-arrived at the conclusion that it was made in violation of the statute requiring such to-be made according to the front foot rule. We stated in effect that the assessment did
 
 *1087
 
 not comply with the provisions of Act No. 288 of 1928 because the ordinance failed to provide that the assessment be made in a manner to disclose not only the unconditional liability of the property on the west side of the street for the amount of the assessment against it but also its contingent liability for a corresponding amount assessed against the property on the other side of the street.
 

 The plaintiff at various times was called upon to advance court costs in the aforementioned suits amounting to $1,349.08 for which the city has not reimbursed him. The plaintiff is deprived of any further recourse against the east side of the street because it has been appropriated in its entirety by the levee board, as aforementioned, and substantially all the lots on the west side of the street have been subsequently acquired by, or incumbered in favor of, third persons. The plaintiff has repeatedly made amicable demand on the city for the amount due on the contract which the city has refused to pay.
 

 Counsel for the defendant contends that Act No. 288 of 1928 is unconstitutional for the reason that the act is broader than its title and that it violates Section 2 of Article 1 of the Constitution of this State and the Fourteenth Amendment of the Federal Constitution. In opposition to this contention it is urged by counsel for plaintiff, among other things, that the defendant is without interest to urge the invalidity of the statute inasmuch as its constitutional rights have not been thereby invaded; and further that the defendant has waived any right it had, and is estopped to assert the invalidity of the statute which it procured the passage of, acted under and contracted with reference to with others to whom it represented the validity thereof, all to its own benefit and advantage and to the loss and damage of the plaintiff in event its invalidity be decreed.
 

 It appears from this record that the city and certain property owners secured the enactment of Act No. 288 of 1928. The city entered into the contract with the plaintiff’s assignor under the provisions of the act. The city did not comply with the provisions of the act in making the assessment or the statutes governing same. It was because of this error on the part of the city in making the assessment that the plaintiff is deprived of the means of recovering from the property owners. No fault is laid at the door of the plaintiff or the contractor. Under such circumstances we are of the opinion that since the work has been completed and accepted by the city, it cannot accept the benefits and at the same time escape the obligations of the contract. It is estopped and cannot escape its obligations by means of an attack on the constitutionality of the act. The city cannot now be heard to attack the constitutionality of the act. “No one ought to enrich himself at the expense of another.” R.C.C. art. 1965.
 

 In the recent case of Burk v. Livingston Parish School Board, 190 La. 504, 182 So. 656, we held that the school board was estopped fpom attacking the validity of a contract after the work was properly performed and accepted by the board. It was
 
 *1089
 
 urged therein that the contract was made in violation of a statute. In reviewing pri- or jurisprudence we stated in effect that neither law, equity, nor good conscience allow one to claim the benefits and at the same time escape the obligations of an undertaking. A person cannot accept the benefits of an Act and repudiate its obligations. We also stated therein that persons cannot accept the fruits of a contract and allege its invalidity for breach thereof known at the time of such acceptance of the fruits.
 

 In the case of Clark v. City of Opelousas, 147 La. 1, 84 So. 433, 435, this pertinent statement was made:
 

 “In any event, we think it too late, after the work has been completed, and in large measure paid for, both the city and property owners having received the benefits thereof, for either of them to complain, and that the plea of estoppel, on that score, was properly maintained.”
 

 In the case of Saunders v. City of Opelousas, 159 La. 527, 105 So. 608, the plaintiff sued to recover a balance due on a certificate . of indebtedness issued by a municipality for the construction of sidewalks. It was contended that the certificate was unconstitutional. This court affirmed the judgment of the lower court given in favor of the plaintiff. We cited therein the case of Hitchcock v. City of Galveston, 96 U.S. 341, 350, 24 L.Ed. 659, wherein the City of Galveston contracted for the construction of sidewalks to be paid for in bonds. After the contract was partly executed the city undertook to repudiate its obligations on the grounds that it did not have the authority to issue the bonds. The judgment therein in the lower court wás in favor of the city sustaining a demurrer. On appeal the judgment was reversed. We quoted with approval the doctrine laid down therein, viz.:
 

 “In the view which we shall take of the present case, it is, perhaps, not necessary to inquire whether those cases- [meaning the decisions which the court below cited] justify the court’s conclusion; for, if it were conceded that the city had no lawful authority to issue the bonds, described in the ordinance and mentioned in the contract, it does not follow that the contract was wholly illegal and void, or that the plaintiffs have no rights under it. They are not suing upon the bonds, and it is not necessary to their success that they should assert the validity of those instruments. It is enough for them that the city council have power to enter into a contract for the improvement of the sidewalks; that such a contract was made with them; that under it they have proceeded to furnish materials and do work, as well as to assume liabilities; that the city has received and now enjoys the benefit of what they have done and furnished; that for these things the city promised to pay; and that after having received the benefit of the contract the city has broken it. It matters not that the promise was to pay in a manner not authorized by law. If payments cannot be made in bonds because their issue is ultra vires, it would be sanctioning rank injustice to hold that payment need not be made at all. Such is not the
 
 *1091
 
 law. The contract between the parties is in force, so far as it is lawful.”
 

 The plea of counsel for the defendants of prematurity and the exceptions of no cause or right of action are leveled at the aforementioned six paving assessments on the west side of the street amounting to $2,091.65. The defendant contends that it has fulfilled its contract with the contractor by levying and effectuating valid and enforceable paving liens on this property. It appears that two of the property owners are insolvent, and another a bankrupt. It does not appear that a judgment would be collectable against the other three. Be that as it may, the assessments were not properly made and therefore are invalid. The contract contemplated that the contractor was to receive legally enforceable liens on the property. The sources of revenue in this respect have been paralyzed and destroyed. The contractor, having performed the work properly, is entitled to recover from the city under these circumstances. The payment failed because the city did not properly make the assessments. It is well settled that notwithstanding a stipulation specially excluding any recourse on the city, a contractor who has done useful works, whose payments failed by reason of subsequent events which had diverted the revenues applied to his claim, could recover against the city with which he had contracted. Cole v. City of Shreveport, 41 La. Ann. 839, 6 So. 688; Hitchcock, v. Galveston, supra; Saunders v. Opelousas, supra; District of Columbia v. Lyon, 161 U.S. 200, 16 S.Ct. 450, 40 L.Ed. 670; Hughes v. Board of Commissioners of Caddo Levee District, 108 La. 146, 32 So. 218.
 

 Counsel for the defendant contends that the city is not liable for the 10% attorney’s fees allowed by the lower court. Under the provisions of Act No. 288 the amount assessed against the property is due and exigible immediately upon the passage of the ordinance authorizing the assessment and if not paid within ten days thereafter the municipality or its transferees has the power to proceed by suit against the property and the owners thereof to enforce collection on the assessment, together with 6% per annum interest from date of acceptance of the work until paid, and 10% of the amount of the judgment as attorney’s fees. The ordinance accepting the work contained a like provision and provided that the notes given by the property owners were to bear, a like rate of interest and the attorney’s fees.
 

 The city refused to pay the balance due on the contract, after repeated demand on it, and the plaintiff was forced to enter suit in order to recover it. The act and the contract contemplate that if the assessments are not paid within ten days after the adoption of the ordinance that the city or its transferees are to receive 6% per annum interest on the amount unpaid until it is actually paid. The act and the contract contemplate the payment of 10% attorney’s fees in event that it is necessary to obtain judgment to collect the amount due and owing. If the city had given valid and enforceable liens and the contractor was required to obtain a judgment in order
 
 *1093
 
 to collect the amount due, under the provisions of the act and the contract itself, he would he entitled to the attorney’s fees. The city has failed to comply with the provisions of the act and its contract and has refused to pay the balance due on the contract, thereby forcing the plaintiff as assignee of the contractor to sue it and obtain. judgment, which, in our opinion, makes the city liable for the attorney’s fees. When a debt is assigned the warranty is, not merely that the debt exist, but that it exist as the parties understood it, that is, accompanied and protected by all the securities contemplated in the contract of assignment. Toler v. Swayze, 2 La.Ann. 880. The assignor of an incorporeal right, even without warranty, guarantees the existence of the right and also the existence of the accessory securities attached to and transferred with it. Templeman v. Hamilton & Co., 37 La.Ann. 754.
 

 “The obligation of contracts extends not only to what is expressly stipulated, but also to everything that, by law, equity' or ■custom, is considered as incidental to the particular contract, or necessary to carry it into effect.” R.C.C. art. 1903.
 

 Counsel contends that the defendant is not liable to plaintiff for the $1,349.08 advanced by the plaintiff to defray the costs of the various suits against the property owners on the east side of the street. The various suits were brought by the attorney for the city with the view of establishing liens on the property on the west side of the street and with the view of collecting the assessments. The city had made the assessments contrary to law and by these suits the parties were trying to cure the city’s error and establish the liens. It was because of the fault of the city in not making the proper assessments that this entailed litigation became necessary. Under such circumstances the city is liable for the costs. Moreover, if the plaintiff had so desired he could have recovered from the city, without the necessity of going into all the litigation to cure the mistake made by the city in the assessments of the property because the city had not complied with the law or its contract in making the assessments.
 

 The only case cited by counsel for defendant in support of his contention that the city is not liable for the attorney’s fees and the cost advanced by the plaintiff is the case of Lemoine v. City of Shreveport, 184 La. 221, 165 So. 873. In that case the city sold to Dr. Lemoine notes and paving certificates which provided for interest and attorney’s fees, indorsing them without recourse. It was held therein that under the Negotiable Instrument Law the city was relieved of paying- the attorney’s fees. The case cited is not in any way similar to the instant case. In the instant case ths city was one of the contracting parties and under the contract was to furnish the contractor with notes and enforceable liens which it has failed to do. The reason the Act provides for attorney fees in case the contractor is forced to obtain judgment to collect the amount due him is that the contractor is to receive full payment for the work, and neither the Act
 
 *1095
 
 nor the contract contemplates that he is to receive less than the contract price by expending sums of money to collect it. The city failed to make the proper provisions to protect him in this respect and should be required to pay the cost advanced and attorney fees. Otherwise, the contractor, or his assignee, would not receive full payment for the work.
 

 For the reasons assigned the judgment appealed from is affirmed at appellant’s cost.
 

 O’NIELL, C. J., does not take part.