Barber Asphalt Paving Co. vs. Watt.

---

No. 12,927.

BARBER ASPHALT PAVING COMPANY VS. JOHN WATT.

SYLLABUS.

1. Statutes exercising the power of taxation in any of its forms, or delegating that power to political subdivisions, are to be strictly construed and closely pursued.

85

51 1345
52 1892
52 1893

51 1345
104 292
104 493
104 724
104 725
104 726
104 728
104 734
104 735

51 1345
105 491

51 1345
109 693

51 1345
112 817
112 1009

51 1345
f117 362
e117 364

Barber Asphalt Paving Co. vs. Watt.

| 51 | 1345 |
| e122 | 318 |

| 51 | 1345 |
| f124 | 393 |
| 125 | 585 |

2. In interpreting such statutes all doubts and ambiguities are to be construed against the taxing power, and if the act be susceptible of more than one interpretation that one must be adopted which is the less onerous to the taxpayer, and which imposes the least burden upon him and his property.

3. These principles of law are held to be particularly applicable to that system of taxation known as "local assessments."

4. A departure in any material part from the plain terms of a statute authorizing local assessments will be fatal.

5. This is so because such statutes are against common right, not being of general application and imposing special burdens upon individuals, or upon one class of the community, not shared by others.

6. Municipal authorities, dealing with such statutes and exercising the powers they confer, must track the strict letter of the law. They cannot by their ordinances increase in any respect the burden upon the property of the citizen, and where such ordinances do this, they are null to that extent.

7. Defendant held liable under the terms of the paving statute (Act 113 of 1886) only for his proportion of total cost of paving the street. He cannot be charged with the cost, according to his frontage, of the paving along the front of the square in which his lots are situated. That is not the rule of apportionment prescribed by the statute.

8. Nor can he, in any event, be held liable for a sum exceeding $3.75 per running foot, which was the maximum rate fixed in the petition of propertyholders as the cost of the improvement.

9. And for the sum assessed against his property no *personal* liability attaches to him beyond the value of the property affected. The proceeding is purely one *in rem* acting on the property benefited and none other.

10. The lien on the property accorded by the statute to secure payment of the assessment, extends to and embraces only lots, fronting on the street paved, of the usual dimensions, according to subdivisions in that part of the city, and where squares have not been subdivided into lots, the lien extends to and embraces only as much of such squares fronting on the street paved as is necessary to form a tier of lots fronting on the street of the usual width and depth.

APPEAL from the Civil District Court for the Parish of Orleans Ellis, J.

*Denegre, Blair & Denegre* for Plaintiff and Appellant.

*William Winans Wall* for Defendant and Appellee.

*George L. Bright, E. W. Whittemore* and *W. S. Benedict* for Mrs. Richardson, Intervenor, Appellee.

Argued and submitted February 24, 1899.
Opinion handed down May 29, 1899.

The opinion of the court was delivered by

BLANCHARD, J. Act No. 113 of the Acts of Louisiana for the year 1886 provides that whenever one-fourth of the owners of real property fronting on an unpaved street in the city of New Orleans shall petition the City Council for the paving of such street, or portion thereof, setting forth the character or quality of paving desired, it becomes the duty of the Council to have the petition published in the official journal once a week for four weeks.

It further provides that if, at the expiration of the publication period, a *majority* of the owners of real property fronting on the street, or the portion thereof it is proposed to pave, do not, by memorial addressed to the Council, oppose the contemplated improvement, the Council shall order the paving, which is to be done by contract awarded to the lowest responsible bidder.

It further provides that three-fourths of the cost of such paving, exclusive of the intersections of streets, shall be borne by the owners of real property fronting on the street or portion of the same paved in equal proportion, "according to the running foot front," and shall be a charge on the property affected in the nature of a "first privilege," priming any other lien or mortgage.

The other fourth of the cost of paving in front of private property, as well as the whole cost of paving intersections, is required to be borne by the city.

In October, 1895, one-fourth or more of the property holders on Calhoun street, in said city, between St. Charles avenue and Claiborne street, petitioned the Council for the paving of Calhoun street, between the streets named, with Trinidad Lake asphalt pavement, *provided* the pavement be guaranteed for five years and an obligation be exacted from the contractor to keep it in good condition during the guaranty period; and *provided further* the pavement with the curbing shall not cost the property holders more than $3.75 per running foot.

The petition was published during the time prescribed by the statute, and, not being opposed, the City Council passed the requisite ordinances directing the work to be done. Specifications were prepared, bids were called for, and plaintiff company, proving to be the lowest bidder, the contract was awarded to it.

The street was paved, and on completion and acceptance of the pavement along each square of the street, certificates of payment were

issued to the contractor by the Commissioner of Public Works and the City Engineer.

These certificates set forth the amount due by each front proprietor, and, based on the same, plaintiff company made out its bills against the property owners.

Defendant owned two squares of ground and part of another square, fronting on Calhoun street, and as the street in front of this property was paved, certificates were issued to the contractor, and, predicated on same, bills aggregating $3,252.97 were made out against him. Payment being declined, this action for recovery is instituted. The prayer is for personal judgment against the defendant and for recognition and enforcement of the statutory privilege on the property owned by him in front of which the improvement was made.

As matter of defense the nullity of the paving contract is alleged on various grounds, summarized as follows:—

1. Because of the incorporation therein of a clause requiring the pavement to be maintained and kept in repair for five years—the contention being that this is in reality a requirement that the repair of the street during the time mentioned shall be at the charge of the property holders (the expense thereof being figured into the bid and thus increasing the cost to the abutting owners), whereas street repair and maintenance is a charge upon the whole city, there being no sanction in the statute for the putting of this expense upon the property owners, and the same, if tolerated, being a taking of private property for public purposes without just compensation in violation of the State and Federal Constitutions.

2. Because the petition of property owners limited the cost of the paving and curbing to $3.75 per running foot, and the City Council was without authority to let out a contract for a larger price per foot —it being averred that $4.41 per running foot is figured out by the city officials as due by defendant to plaintiff company under its contract, and the amount sued for herein being arrived at by a calculation on that basis.

3. Because the statute authorizing the paving directs that three-fourths of the cost of same chargeable to the property holders shall be borne in equal proportions according to the running front foot, which means that the whole cost of the pavement complete being ascertained, the same is to be apportioned among the property owners according to the frontage of each—whereas the method adopted was to

figure the cost of the work in front of each square of the street as completed and charge three-fourths thereof to the property fronting on such square. It is averred that by this means the expense of the work to defendant has been increased.

4. Because the paving of the street in front of defendant's property has been and is of no benefit to the same, but is an injury to it, and it is averred that before a local assessment can be collected against property a benefit conferred must be shown.

5. Because the specifications of the work were not sufficiently definite as to quantity and quality of materials and amount of work to be done, and it is averred that on this account no common standard by which to measure the respective competitive bids was furnished, and, hence, there could be and was no adequate compliance with the law requiring the letting of the contract to the lowest bidder.

Other grounds of defense were set up by defendant and an intervenor, to whom a portion of the property sought to be charged, had been conveyed.

In any event, it was denied that personal judgment could be given against defendant, and that plaintiff must be limited to the value of the property upon which he claims a privilege, which privilege it is denied rests upon the whole square of ground—the contention being it must be restricted to the usual dimension of lots along that part of the square bordering on the pavement.

The court a qua rejected plaintiff's demand as in case of non-suit. It is predicated upon that one of the defenses urging violation of the statutory rule of apportionment of the three-fourths of the cost of the improvement chargeable to the property holders. The other grounds of defenses were not passed upon.

Plaintiff appeals.

It is urged in argument that, inasmuch as other suits based upon similar paving contracts await the determination of the present controversy, we pass upon all the points raised in the case, to the end of a speedy settlement of such disputes.

Statutes exercising the power of taxation in any of its forms, or delegating that power to political subdivisions of the State, must be strictly construed and closely pursued. In interpreting such a statute all doubts and ambiguities are to be construed against the taxing power, and if the act be susceptible of more than one reasonable inter-

pretation that one must be adopted which is the less onerous to the taxpayer, which imposes the least burden upon him and his property.

Sutherland on Statutory Construction, Sections 363, 365; Black on Interpretation of Laws, p. 300, No. 115; Ib. p. 317, No. 119; Cooley on Taxation, p. 419.

These familiar principles of law are peculiarly applicable to that system of taxation known as local assessments, based upon the theory of benefits conferred, so much in vogue at the present time and seemingly on the increase.

Acts authorizing local assessments affect arbitrarily private property. The power may be delegated by the Legislature, but only in plain and unambiguous terms, and a departure in any material part, by the authority to whom the delegation is made, will be fatal.

This is so, because such statutes are against common right. Statutes against common right are those which operate exceptionally to the prejudice of particular persons, those which do not have general application, those which operate on a few while the rest of the community are exempt.

A statute is in derogation of common right which imposes special burdens upon individuals, or upon one class of the community, not shared by others.

Black Interpretation of Laws, p. 300, No. 115.

Municipal authorities, dealing with such statutes and exercising the powers they confer, must track the strict letter of the law. They can not by their ordinances increase in any respect the burden upon the property of the citizen, and where such ordinances do this they are null to that extent. Courts will reduce their scope and effect to and within the strict limits of the law, where the circumstances permit, and where not, will annul entirely such ordinances, reserving to the municipal body, so transgressing the law, to readjust its ordinance on legal lines.

In construing statutes such as that under consideration there is scant if any ground for what is sometimes called "equitable" interpretation. It is the plain letter of the statute that must be followed.

Indeed, the tendency of modern decisions of the courts is to reduce to a minimum the difference between strict and liberal construction.

"When", says Mr. Black, pp. 282, 283, No. 113, "strict construction is appropriate, the courts, standing upon the letter of the statute, will accept it as they find it, and will not undertake to amend or reform

the language the Legislature has seen fit to employ. They will not put a forced or strained interpretation upon the words of the law * * * in search of a supposed legislative intent, nor supply apparent omission or oversights."

"Strict construction" is that which refuses to expand the law by implications or equitable considerations, but confines its operation to cases which are clearly within the letter of the statute as well as within its spirit or reason. When the sense is manifest and leads to nothing absurd, there can be no reason not to adopt it. To go elsewhere in search of conjectures, in order to find a different meaning, is not so much to interpret the statute as to elude it.

Black, pp. 37, 38, 39.

These observations apply with force to the action of the city authorities in awarding the paving contract under consideration to plaintiff company.

There has not been a strict compliance with the statute; the ordinance and the contract have broadened beyond the scope and the spirit of the law.

Whereas the statute declares that the cost of paving shall be borne three-fourths by the owners of the property fronting on the pavement *in equal proportions* according to the running foot front, plaintiff's contract provides for the measurement of each square of ground fronting on the street *as completed,* and calls for the issuance to plaintiff of pay certificates based on such measurement, square by square.

In other words, defendant is not called upon to pay his proportion of the entire cost of the paving of the street according to his frontage, which only is his liability by the plain terms of the law; he is called upon to pay his proportion, according to his frontage, of the total cost of the squares respectively where his property is situated, which is not his liability under the law.

Pay certificates, therefore, issued against him, based upon the measurement and cost of the pavement along the front of the squares where his property lies, do not evidence an enforceable claim against him.

What he owes is his proportion, according to the running foot front, of three-fourths of the entire cost of paving Calhoun street from St. Charles avenue to Claiborne street; excluding the intersections, and plaintiff's case is not made out against him until it is

shown by the evidence what this proportion is. Not being shown, plaintiff was properly non-suited, and as this defense is matter of law, it need not have been set up as a special plea, as plaintiff contends, but can well be taken advantage of under the general denial by defendant of liability as charged in the petition of plaintiff.

We hold, furthermore, that defendant's liability as just stated, or rather that of the property he owned at the time this paving work was done, is limited to not exceeding, in any event, $3.75 per running foot.

This is so for the very good reason that property holders must be held as having consented to the improvement only upon the condition that the cost of paving and curbing should not exceed that rate.

The petition of property holders mentions that rate as the price beyond which they were not willing to go. *Non constat* that a majority of the property holders would, by not opposing, have consented to the work if its cost had been fixed at a higher rate, or been left to the discretion of the City Council in accepting bids.

Under the statute *the consent* of the property holders is the *sine qua non* of the ordering of such improvements.

It follows that the conditions upon which this consent is predicated must be strictly observed. The City Council was without authority to award this contract, so far as the property holders are concerned, for a sum greater than that named in the petition of property holders, and to the extent that the prescribed rate is exceeded defendant is not liable.

The maintenance clause in the contract, by which plaintiff company binds itself to keep the street in good order and condition for a term of five years, must be construed with reference to the specifications for the work and the bid of the plaintiff thereon. The latter contained the guarantee that Trinidad Pitch Lake asphalt would be used and that the work would be constructed in such manner that the same would endure without requiring repairs for five years, but that if repairs should become necessary plaintiff company would make same at its expense.

It thus appears that plaintiff's undertaking was to lay paving consisting of such materials and put down in such manner as to endure for five years without repair, and it guaranteed its work to be of such character. If not of such character, the loss would fall on the com-

pany at whose expense the repairing needed within five years would be done.

This clause is not legally objectionable. It is regarded as simply a guarantee of the quality of the work contracted to be done, and does not render the contract void as increasing the burden of abutting owners by requiring them to pay for keeping the pavement in repair for the period of five years after its completion. It is an incident of the contract—not an independent undertaking.

City of Schenectady vs. Trustees of Union College, 21 N. Y. Sup. 147; Cole vs. People, 43 N. E. Rep. 607; Wilson vs. City of Trenton, 38 Atlantic Rep. 635; Barber Asphalt Paving Co. vs. Ullman, 38 S. W. Rep. 464; Osborne vs. Lyons, 73 N. W. Rep. 650.

After one-ourth of the property holders had petitioned for the improvement, after their petition had been published for the time the law requires, and after, in the absence of objection by a majority of the property holders to the work, it had been ordered by the City Council and completed by the contractor, it comes too late for this defendant property holder, or any one claiming under him, to raise the defence that his property has not been benefited by the improvement.

Especially is this so, in the absence of any averment of fraud or dishonesty on part of the City Council in carrying into execution the provisions of the law, and in the absence of any warrant for holding that the statute is on its face so unjust and oppressive as to justify the court in interfering.

See Planting Co. vs. Tax Collector, 39 La. Ann. 462; 118 Mass. 168; 120 Mass. 108; 78 Ky. 170; 6 S. W. Rep. 774; 48 Pac. Rep. 877; 70 N. Y. Rep. 605.

With regard to the contention that the specifications submitted, upon which bids for the work were invited, were not sufficiently definite as to quality and quantity of materials and amount of work to be done, we think the objection without force. It is hardly possible for every detail of a work like this to be forseen and provided for in the specifications. The specifications in the instant case are found to be those usual when work of the kind is ordered, and sufficiently full for all practical purposes.

Neither is there force in the objection urged that interest at the rate of six per cent. per annum is required to be paid on the deferred portion of the cost of the improvement assessed against the property

owners, while on the city's portion no interest is required. The statute contemplated the city's portion should be paid in cash, and there is nothing to show it was not so paid. It provided the property holders might ask that the share of the cost falling to them be paid one-third cash, the balance in one and two years—the deferred payments to draw interest. The property holders did petition for this, and it was legal and proper to grant it. While defendant was not one of those who signed the petition, neither he nor other property holders not signing signified any objection to any of the proceedings leading up to the letting out of the work.

Another and more serious contention of the defense is that in no event does any *personal* liability attach to property holders on account of this local assessment; that whatever liability there may be in this regard it must be confined to the property affected with the lien granted by the statute; and that after exhausting recourse against the property, individual property holders can not be further pursued for any balance remaining over, and other property of theirs, not on the street paved, subjected to its payment.

We hold this to be so, and that the proceeding is one purely *in rem,* acting on the property supposed to be benefited, and none other.

Act 113 of 1886 does not prescribe any personal liability, and the contract sued on is predicated expressly on the terms of that statute. We think the true meaning and intent of the act is to impose a charge for street improvement upon the property benefited by the same, and not to declare, further, the personal liability of the owner over and above and beyond the property affected. Indeed, had the act gone to the extent of imposing a personal obligation upon the property owner, a constitutional question of serious import would be raised.

This brings us to the question as to how far the privilege upon the property affected, granted by the law, extends. Some of the squares fronting on the street paved are naked squares of vacant ground. Streets through that part of the city have been projected in such way as to form squares. Many of these streets have been opened and in use. Calhoun street is one of these. But some of the streets crossing Calhoun have not been opened. Nevertheless they are well defined. Some of the squares bordering on Calhoun street appear not to have been actually subdivided into lots. Had they been so divided it is clear the lien would affect only the tier of lots *fronting on the street.* Now, because an actual subdivision of the squares into lots had not

taken place at the time of the completion of the pavement, does the lien extend over and embrace the whole square of ground? Such can not be held either to be the letter or the intention of the statute, which plainly refers only to property "fronting on said pavement."

We hold the lien of the statute extends to and embraces only lots, fronting on the street paved, of the usual dimensions according to subdivisions in that part of the city, and where squares have not been subdivided into lots, then the lien extends to and embraces only as much of such squares fronting on the street paved as is necessary to form a tier of lots fronting on the street of the usual width and depth.

While sustaining the decree appealed from plaintiff's right to proceed against the property of defendant and intervenor (Mrs. Richardson) according to the views herein expressed, is fully reserved.

Judgment affirmed.

MONROE, J., takes no part, the case having been submitted previous to his appointment on this bench.