85 So.2d 276 (1956)
Harry GAMBURG, Plaintiff-Appellant,
v.
CITY OF ALEXANDRIA et al., Defendants-Appellees.
No. 8383.
Court of Appeal of Louisiana, Second Circuit.
February 2, 1956.
Rehearing Denied March 2, 1956.
Writ of Certiorari Denied May 7, 1956.
*278 J. B. Nachman, Alexandria, for appellant.
Frank H. Peterman, Alexandria, for appellees.
AYRES, Judge.
This appeal is taken by plaintiff from a judgment of the trial court rejecting his demands and prayer for both a prohibitory and mandatory injunction in connection with a certain paving project on North 18th Street from Bolton Avenue to Rapides Avenue in the City of Alexandria. The appeal was taken to the Supreme Court of Louisiana and that court transferred the matter to us. 227 La. 687, 80 So.2d 372. By injunctive process, plaintiff sought to enjoin the alleged illegal abandonment and obstruction of a part of North 18th Street in Alexandria, Louisiana, and compel the removal of a concrete curb erected almost entirely across the street, and prohibiting the inclusion in the cost of paving of said project the expense of paving of a part of Shirland Avenue, as well as the expense for the curb and gutters not only on said Avenue but surrounding a circle constructed at the intersection of said Avenue and 18th Street.
Plaintiff is the co-owner of property located at the intersection of North 18th Street and Rapides Avenue, upon the latter of which said property fronts, the rear extending northward on 18th Street, with an entrance to the back by an alley from said street.
The defendants are the City of Alexandria, W. H. Lambdin, Street Commissioner, and Charles W. Cook, Acting City Engineer.
On July 13, 1953, plaintiff and a group of other property owners and taxpayers of the City of Alexandria petitioned the Commission Council of said City as follows:
"We, the undersigned, owners of real estate abutting upon North 18th Street from Bolton Avenue to Rapides Avenue hereby request and petition your Honorable body, by proper ordinance and proceedings, to cause the paving of the street between designated points with six-inch Portland cement concrete, together with necessary concrete curb and gutter and drainage structures; said work to be done and paid for as provided for in the 5-payment plan, Sections 3381 to 3391 inclusive of Title 33 of the Revised Statutes of 1950, as revised."
A brief description of the locale of these streets is deemed necessary for an understanding of the issues presented and the discussions which will follow. Bolton Avenue, running in a northwest-southeast direction, and Rapides Avenue, in an east and west direction, are principal thorough-fares *279 for traffic entering and leaving the western and northern sections of the City. Their intersection forms the apex of a triangle with North 18th Street, running north and south, forming its base connecting these two thoroughfares. Shirland Avenue runs east and west parallel to Rapides Avenue and crosses North 18th Street near but south of its intersection with Bolton Avenue and then continues a short distance eastward to its own intersection with Bolton Avenue.
Plaintiff alleges that, pursuant to petition addressed to the City Council by property owners of property abutting North 18th Street under the provisions of LSA-R.S. 33:3381 et seq., petitioners requested said North 18th Street be paved with Portland cement concrete and that the necessary concrete curb, gutter and drainage structures be constructed. The record establishes that this petition was presented to the Commission Council on August 3, 1953, which was on that date referred to the Acting City Engineer for checking, a report on which was made September 23, 1953, on which date the Council by resolution ordered the paving of North 18th Street from Rapides Avenue to Bolton Avenue and directed the Secretary-Treasurer of the City to advertise for bids, to be opened on October 19. Pursuant to that authority, an appropriate advertisement for bids was inserted in the "Town Talk" in its issues published September 28 and October 5, 1953, which bids were received and opened in connection with said work. The bids were referred to the Street Commissioner and Acting City Engineer for tabulation, a report of which was made to the Commission Council November 2, 1953, on which date a resolution was introduced to award the contract to W. R. Aldrich & Company, notice of which was given by publication in the "Town Talk" of November 3, 1953. The resolution authorizing the execution of the contract was adopted on November 12, 1953, wherein the Mayor was authorized to sign the contract for and on behalf of the City, which was done on that date.
By the terms of this contract, Aldrich & Company agreed to pave North 18th Street from Rapides Avenue to Bolton Avenue "as provided for in the plans, specifications, proposal and other contract documents and under the supervision and according to the instructions of said Engineer, etc." Work under the contract began January 14, 1954, and continued until February 5, when plaintiff made a protest as to the manner in which the work was being done at the intersection of the street with Shirland Avenue. Conferences were held by the Commissioner and plaintiff February 6 and 8 wherein the Commissioner, on the recommendation of the Acting City Engineer, agreed to reduce the size of the traffic island contemplated to be constructed in said intersection and to set the curb back a few feet in front of the Colonial Cafe located on the west side of North 18th Street north of Shirland Avenue and south of Bolton Avenue. Plaintiff was not satisfied with this arrangement, contending that the petition and the proceedings based thereon authorized only the paving of the street between the two avenues and from one to the other; that, accordingly, the Commission Council was without authority to erect or construct a circular curb across practically the entire width of North 18th Street and direct traffic around the same and in between a traffic island located at the intersection of Shirland Avenue and North 18th Street and thereby abandon a portion of said street and pave a portion of Shirland Avenue pursuant to a petition requesting only the paving of North 18th Street between the avenues referred to.
North 18th Street has a width of 60 feet. The paving, as constructed, had a width of 36 feet, leaving unpaved 12 feet on each side between the concrete slab and the street line. The circular curb in the front of the aforesaid Colonial Cafe projected a distance of approximately 45 feet from the west line of the street right-of-way, or about 33 feet from the west curb line of North 18th Street, as shown by scale of the drawings filed in evidence, *280 which was reduced by order of the Commissioner as aforesaid to approximately 30 feet from the said west curb line of said street.
Plaintiff contends that the paving should have been done in accordance with the provisions of the petition, which requested the paving of North 18th Street as "dedicated" and between Rapides and Bolton Avenues; that the Commissioner and the Acting City Engineer altered the plans and specifications without the authority of either the petition of the property owners or of the Commission Council; that the aforesaid curb extending almost entirely across North 18th Street interfered with and impeded the flow of traffic and constituted an obstruction and a hazard to traffic, and that as a result of the aforesaid impediment to traffic entering North 18th Street, he had sustained a pecuniary loss and a depreciation of his property. Plaintiff further contends that petitioners did not authorize the paving of the prongs or aprons into Shirland Avenue, and that he should not be assessed with any part of the costs of such unauthorized undertaking.
Certain municipalities and all incorporated parish seats are authorized under the statute under which this improvement was undertaken, on the initiative of their governing authorities, to pave and/or otherwise improve their streets and alleys. Where such improvement is undertaken on the initiative of the governing authorities, the municipality shall pay of the total cost the proportion that the net area of the street intersections bear to the total area of the street, alley or curbing to be improved. Where, however, the improvement is initiated by and undertaken upon authority of a written petition of the owners of more than 50 percent of the lineal front footage of the property abutting on any street or alley, the entire cost of the improvements is assessable to the owners of the real estate abutting on the street or alley to be improved according to the front footage of the property owned by them. The project here concerned was instituted under this latter procedure.
The provisions of this statute are in nowise mandatory but merely permissive. The statute provides that the municipalities may undertake these improvements. Inasmuch as the improvements contemplated here were only undertaken on the initiative of the property owners upon their written petition addressed to the Commission Council, the petition constituted the authority of the Commission Council to undertake this work. Under the statute the consent of the property holders is the sine qua non of the ordering of such improvements.
In Barber Asphalt Paving Co. v. Watt, 51 La.Ann. 1345, 26 So. 70, 72, the Court of Appeal stated general rules governing controversies of this nature. That case, like the instant one, involved street paving undertaken pursuant to a petition signed by the abutting property owners. There the petition limited the cost of the improvements to be undertaken at an amount not to exceed $3.75 per running foot. It was there contended and held that the City Council was without authority to award a contract for a larger price per foot. What the court stated there is clearly applicable here. It was said:
"Statutes exercising the power of taxation in any of its forms, or delegating that power to political subdivisions of the state, must be strictly construed and closely pursued. In interpreting such a statute, all doubts and ambiguities are to be construed against the taxing power; and, if the act be susceptible of more than one reasonable interpretation, that one must be adopted which is the less onerous to the taxpayerwhich imposes the least burden upon him and his property. Suth.St.Const. §§ 363, 365; Black, Interp.Laws, p. 300, § 115; Id. p. 317, § 119; Cooley, Tax'n, p. 419. These familiar principles of law are peculiarly applicable to that system of taxation known as `local assessments,' based upon the theory of benefits conferred, so much in vogue at the present time, and seemingly on the increase. Acts authorizing local assessments affect arbitrarily *281 private property. The power may be delegated by the legislature, but only in plain and unambiguous terms; and a departure in any material part, by the authority to whom the delegation is made, will be fatal. This is so, because such statutes are against common right. Statutes against common right are those which operate exceptionally to the prejudice of particular persons; those which do not have general application; those which operate on a few while the rest of the community are exempt. A statute is in derogation of common right which imposes special burdens upon individuals, or upon one class of the community, not shared by others. Black, Interp.Laws, p. 300, § 115. Municipal authorities, dealing with such statutes and exercising the powers they confer, must track the strict letter of the law. They cannot by their ordinances increase in any respect the burden upon the property of the citizen, and, where such ordinances do this, they are null to that extent. Courts will reduce their scope and effect to and within the strict limits of the law, where the circumstances permit, and, where not, will annul entirely such ordinances, reserving to the municipal body, so transgressing the law, to readjust its ordinance on legal lines. In construing statutes such as that under consideration, there is scant, if any, ground for what is sometimes called `equitable' interpretation. It is the plain letter of the statute that must be followed. Indeed, the tendency of modern decisions of the courts is to reduce to a minimum the difference between strict and liberal construction. `When,' says Mr. Black (pages 282, 283, § 113), `strict construction is appropriate, the courts, standing upon the letter of the statute, will accept it as they find it, and will not undertake to amend or reform the language the legislature has seen fit to employ. They will not put a forced or strained interpretation upon the words of the law * * * in search of a supposed legislative intent, nor supply apparent omission or oversights.' `Strict construction' is that which refuses to expand the law by implications or equitable considerations, but confines its operation to cases which are clearly within the letter of the statute, as well as within its spirit or reason. When the sense is manifest, and leads to nothing absurd, there can be no reason not to adopt it. To go elsewhere in search of conjectures, in order to find a different meaning, is not so much to interpret the statute as to elude it."
It was held that the statute authorizing the improvement was not strictly complied with and that the ordinance and the contract broadened the scope and the spirit of the law. The court concluded:
"We hold, furthermore, that defendant's liability as just stated, or, rather, that of the property he owned at the time this paving work was done, is limited to not exceeding, in any event, $3.75 per running foot. This is so for the very good reason that property holders must be held as having consented to the improvement only upon the condition that the cost of paving and curbing should not exceed that rate. The petition of property holders mentions that rate as the price beyond which they were not willing to go. Non constat that a majority of the property holders would, by not opposing, have consented to, the work if its cost had been fixed at a higher rate, or been left to the discretion of the city council in accepting bids. Under the statute, the consent of the property holders is the sine qua non of the ordering of such improvements. It follows that the conditions upon which this consent is predicated must be strictly observed. The city council was without authority to award this contract, so far as the property holders are concerned, for a sum greater than that named in the petition of property holders; and, to the extent that the prescribed rate is exceeded, defendant is not liable."
*282 The Supreme Court, in Adams v. Town of Leesville, 210 La. 106, 26 So.2d 370, 372, after observing that a contract for street paving must conform to the advertisements and bids, citing the case of Barber Asphalt Paving Co. v. Watt, supra, wherein it was held that a departure in any material particular from the plain terms of a statute authorizing local assessments would be fatal, held:
"`* * * If a contract differing therefrom in terms be awarded or made, it cannot be said to have been the result of the competition which the statute requires, and it is invalid. The rule that the contract must conform to the plan, specification, bid, and advertisement applies, although but one bid was made, and although there is no allegation or suggestion of fraud, and although the change made in the contract is to the advantage of the city.'
"In the case of Barber Asphalt Paving Co. v. Watt, 51 La.Ann. 1346, 26 So. 70, the Louisiana Supreme Court, in an opinion by Justice Blanchard, held that `* * * A departure in any material part from the plain terms of a statute authorizing local assessment will be fatal.'"
All these observations apply with equal force to the action of the defendant's Commission Council. The petitioners requested that the street be paved from Rapides Avenue to Bolton Avenue. These avenues constituted two definite points between which the paving was requested. The petition did not request or authorize the paving of any part of Shirland Avenue or the erection of a barrier, curb or other obstruction over and almost entirely across the street requested to be paved. As heretofore stated, it was discretionary with the Commission Council whether it would accept the petition and proceed with the work as requested; it was not mandatory that it do so. Had it determined upon a course of construction, as it did, not in accord with but beyond the terms of the petition, it could have declined to accept the petition or to pursue the work in accordance therewith. The Commission Council had ample authority, had it so elected to do, to proceed on its own initiative, with the provision that it pay its proportionate part of the cost based upon the area of the intersections; otherwise, attention could have been directed to the petitioners of its unwillingness to undertake the improvements in accordance with the terms of the petition and attempt to secure their consent to either a new petition or one modifying its terms consistent with the conclusions of the members of the Council. Neither course open to defendant was pursued nor attempted to be pursued.
While the statute may dispense with the necessity of a petition or the consent of the property owners as a condition precedent to the making of public improvements, such as the paving of a street and as the statute in question so provides, yet, however, where the petition or consent of the property owners to be assessed is required by statute as a condition precedent to the making of an improvement, compliance with such petition is necessary. The only manner in which the Commission Council may assess the entire cost of a street paving project against the abutting property owners under the authority of the statute invoked here is upon a petition of such property owners. If the governing authority elected to proceed on its own initiative then the proportionate costs of the street intersections must be borne by the municipality and is unassessable against the abutting property owners. Where the petition or consent of the property owners to be assessed is required by charter or statute as a condition precedent to the making of improvements by the municipality, a compliance with the provisions of such charters or statutes is necessary. Such requirements are to be strictly construed, and since the right of petition or consent depends solely on legislative grant, it will not be extended beyond the clear implication of the charter or statute.
63 C.J.S., Municipal Corporations, § 1089, p. 734, states that a petition for an improvement may be considered in the light of an *283 offer which becomes binding on the acceptance of it by the municipal authorities.
The authority conferred upon the Commission Council to undertake the improvement contemplated here was derived from the petition of the abutting property owners, the primary purpose of which was that North 18th Street would be paved from Rapides Avenue to Bolton Avenue. This was not complied with. The area of the circular curb hereinbefore referred to has a length of approximately 90 feet along the curb line of the west side of 18th Street, which area has, as aforesaid, a maximum width of approximately 30 feet. This was included within the terms of the petition and in the contemplation of its signers as a part of the street to be paved. It should have been paved pursuant to the wishes of the parties, as expressed in their petition. That petitioners would have signed the petition agreeably to the action subsequently taken by defendant is purely conjectural. It suffices that they did not authorize the improvement as attempted in this instance.
In State ex rel. Wheless Inv. Co., Limited v. City of Shreveport, La.App., 142 So. 641, 644, this court, through the late Judge Taliaferro, stated:
"For one to sign a petition asking a municipality to do certain things authorized by law certainly does not preclude the petitioner from thereafter contesting the legality of what is done pursuant to the petition. If that were true, property owners would be reluctant to petition for public improvements to be made. When property owners file a petition with the municipal authorities asking that certain improvement be made, it has no further significance than their consent for the work to be done in the manner prescribed by law."
The author of that opinion, later in City of Natchitoches v. Kile, La.App., 54 So.2d 834, 836, stated:
"Laws that provide for the coming into existence of liens and privileges are strictly construed, and where it is provided that they may arise only after the performance of certain definite acts by a governing authority, strict adherence to such requirements is mandatory as a condition precedent thereto."
The petition of plaintiff and the other abutting property owners to pave North 18th Street between designated points, that is, from Rapides Avenue to Bolton Avenue, could be construed in no other light than to require the paving of the street between Rapides Avenue as one terminus and Bolton Avenue as the other. The petition was definite and concise as to the location and termini of the improvements to be made.
While defendant contends that plaintiff is without standing at all in this litigation unless he could show some real, actual damage, the record discloses that he does possess a pecuniary interest, even though it should be conceded that he has not been damaged by the depreciation of his property by virtue of the obstruction and impediment to traffic entering a street from which his property is serviced. As a signer of the petition, it could hardly be successfully contended that he was without right to complain when the governing authority either fell short of accomplishing the purpose intended by its failure to pave the entire street requested or to go beyond the work sought to be done by extending it to public thoroughfares not covered by the petition, such as extending the paving into Shirland Avenue. His interest certainly extends to a possible assessment against him for the cost of such additional paving and the curb surrounding the area so selected to be paved. He had an interest in and most positively has a right and a remedy relative to the completion of the work and improvements as petitioned for and as accepted to be done by the governing authority of the municipality.
It is strenuously urged that the acts of the Commission Council, in departing from the language of the petition and in *284 creating the intersection with Bolton Avenue, as it did, and in the paving of a portion of Shirland Avenue in connection therewith, all under the authority of the petition of plaintiff and the other property owners, were discretionary; that its acts were in pursuance of a legislative function and that the courts should not interfere therewith or substitute its own judgment in lieu of that of the Municipal Council. We recognize the general rule that the exercise of discretionary powers by municipal authorities within the prescribed legislative limits, where there is no fraud, oppression or arbitrary action, will not be reviewed by the courts. Hagmann v. City of New Orleans, 190 La. 796, 182 So. 753; Caz-Perk Realty, Inc., v. Police Jury of East Baton Rouge Parish, 213 La. 935, 35 So.2d 860; Jeffries v. Police Jury of Rapides Parish, La.App., 53 So.2d 157.
This, of course, includes matters of eminent domain and the laying out of streets, alleys, avenues and parks, and the straightening or widening of streets and in changing the grades thereof, as well as the abandonment of public streets or alleys where they are no longer needed for such purposes. The expediency in the determination of these matters rests primarily in the discretion of the municipality, and in the absence of fraud, collusion or arbitrary action is not to be interfered with. However, as pointed out hereinabove, there is a clear departure from the terms of the petition, which, upon its acceptance by the municipality, became binding upon it. There has been neither a strict nor even a reasonable compliance therewith.
The other defenses as to the discretion of the Municipal Council in constructing intersections, traffic islands and other structures relative to traffic regulations or traffic safety have no bearing on the primary and principal issue that the Council failed to comply with the petition in causing North 18th Street to be paved. Its failure under the circumstances could not be said or classified less than as arbitrary and illegal. That the action taken by it may, in its opinion, be consistent with good engineering practice and in the interest of traffic safety affords no just ground for a departure from the obligations assumed or undertaken on the acceptance of the property owners' petition.
Defendants question plaintiff's use of the word "dedicated" in referring to the street upon which the improvements were to be made as if the word "dedicated" contravened or modified the terms of the petition and the proceedings had in connection therewith. We do not so construe the word as significant in that respect. Reference to the street to be paved and particularly as to the termini of the project at Rapides and Bolton Avenues necessarily referred to all of those streets to be paved as contained in the official maps of the City and as platted. "Dedicated" in this instance refers to the streets as located and is synonymous with "platted".
As pointed out heretofore, the acceptance of the petition of the abutting property owners by the City created a contractual relationship between such owners and the City. A departure from any material part of the plain terms of such relationship is a breach thereof. The failure of the City to carry out the plain, unambiguous terms of the petition accepted by it constitutes a breach of such contractual relationship. The absence of allegation, suggestion, or proof of fraud and the establishment that a change, alteration or modification of the terms thereof was to the advantage of the City is a matter of no consequence. Barber Asphalt Paving Co. v. Watt, supra; Adams v. Town of Leesville, 210 La. 106, 26 So.2d 370.
In the cases of breach of contract, where the parties have the power of performing their obligations under the contract, since performance is the more complete remedy, it should be allowed where it is available and demanded. Such is the situation in the present controversy. Plaintiff and other property owners petitioned for the paving of a street between certain definite points. The obligations imposed upon the City by its acceptance of the petition *285 have not been complied with. LSA-C.C. Articles 1926 and 1927 provide that on the breach of an obligation to do or not to do, the obligee is entitled, in cases which permit it, to a specific performance of the contract, particularly where the other party has the power of performing the contract. The Code further provides that the obligee may require that anything which has been done in violation of a contract be undone, if the nature of the cause will permit, and that restoration be made to the former situation, LSA-C.C. Art. 1928, and that he may demand that the obligor be restrained from doing anything in contravention of his obligation. An injunction may compel a party to do, as well as to constrain him from doing. Baton Rouge Bldg. Trades Council v. T. L. James & Co., Inc., 201 La. 749, 10 So.2d 606, 625; Petit v. Cormier, 1 McGloin 370; Pierce v. City of New Orleans, 18 La.Ann. 242; McDonogh v. Calloway, 7 Rob. 442; Borne v. Perret, 1 Rob. 342.
It was also held in Commercial-Germania Trust & Savings Bank v. Russell, 148 La. 334, 86 So. 831, and in Gulf Refining Co. of Louisiana v. Hayne, 148 La. 340, 86 So. 891, that the only reason why the breach of any contract gives rise ordinarily only to an action in damages is that, generally, specific performance cannot be enforced. However, performance being the more complete remedy, there can be no reason why it should not be allowed in cases where it is available and is demanded. If the contract entered into does not cover the completion of the work as petitioned, we know of no reason why the City may not resort to proceedings leading to the execution of another contract for the performance of the work remaining to be done in order to complete the project.
What are plaintiff's rights as to a mandatory injunction? In Broussard v. Cormier, 154 La. 877, 98 So. 403, 404, wherein a servitude was recognized under LSA-C.C. Art. 660 in favor of an upper estate against a lower estate burdened with receiving the waters which run naturally from the upper estate, the owner of the lower estate had impeded the flow of the water from the upper estate by the closing and building of a levee. A mandatory injunction was sought to compel the opening of passages in the levee to permit the water to flow. In this connection the court stated:
"Objection was made to the right of the judge to issue a mandatory injunction in a case like this, even after hearing on a rule nisi. We think the ruling of the court was correct. The general rule is that an injunction will issue only in its prohibitory form, but when a defendant obstructs a plaintiff in the enjoyment of a real right, as by fencing a common passageway or building a levee across a drainage course, the latter is entitled to a prohibitory injunction restraining the disturbance and to a mandatory injunction for the removal of the obstruction or to undo what has been illegally done. State ex rel. Yale v. Judge, 41 La.Ann. 516, 6 So. 512; Black v. [Good Intent] Towboat Co., 31 La.Ann. 497; Vicksburg, S. & P. Ry. Co. v. Webster Sand, Gravel & Const. Co., 132 La. 1051, 62 So. 140, 47 L.R.A.,N.S., 1155." (Emphasis supplied.)
This principle was recognized in Harris v. Pierce, La.App., 73 So.2d 330, 334, relative to the removal of a construction erected in violation of a restrictive covenant affecting property in a subdivision of Jefferson Parish, wherein it was stated:
"The general rule is that an injunction will issue only in its prohibitory form, but when a defendant obstructs plaintiff in the enjoyment of a real right, the latter may be entitled to a prohibitory injunction restraining the disturbance and also to a mandatory injunction for the removal of the obstruction or to undo what has been illegally done. Broussard v. Cormier, 154 La. 877, 98 So. 403." (Emphasis supplied.)
It was recognized, however, that a mandatory injunction should not issue save after *286 a hearing on the merits of the case or in aid of the enforcement of a prohibitory injunction which has already been allowed. Board of Commissioners of Petite Anse Drainage Dist. v. Iberia & Vermilion R. Co., 117 La. 940, 42 So. 433; Broussard v. Cormier, supra; Harris v. Pierce, supra.
However, as was stated by the trial judge in his opinion, this matter was dealt with as being on the merits and was so tried. Judgment was rendered as after a trial on the merits, rejecting plaintiff's demands and denying his prayer for injunctions. As was observed by His Honor, "Plaintiff seeks to compel the removal of the curbing in front of the Colonial Cafe and around the island and to have paved that portion of North 18th Street embraced within these curbings", and our view is that this case is one directly attacking as illegal or ultra vires the actions of the municipality and its officers and agents, having for its purpose the undoing of that which has been done unlawfully or without authority, and to require the performance of the acts which they were legally required to do, as well as to enjoin the assessment for improvements constructed beyond the confines of the street petitioned to be paved.
Our review of the record has led us to the conclusion of the correctness of plaintiff's position and the justice of his cause. He is entitled to the relief sought. Accordingly, the judgment appealed will have to be reversed.
For the reasons assigned, the judgment is avoided, reversed and set aside and there is now judgment in favor of Harry Gamburg, plaintiff, and against the defendants, City of Alexandria, W. H. Lambdin, Commissioner of Streets, and Charles W. Cook, Acting City Engineer, and their agents, servants and employees, and other persons, firms or corporations, acting for or pretending to act in their behalf, restraining, prohibiting and enjoining them and each of them from obstructing and closing North 18th Street, particularly by the placing of a concrete curb extending outwardly into or partially or entirely across said Street near its intersection with Bolton Avenue, and further restraining, prohibiting and enjoining the City of Alexandria and the Commission Council thereof, as its governing authority, from assessing the cost of the paving laid beyond the limits of North 18th Street between Rapides and Bolton Avenues, and particularly the cost of the paving of a part of Shirland Avenue near its intersection with North 18th Street, as well as the cost of the curb and gutters thereon and those surrounding the traffic island and circle erected at North 18th Street, or any part thereof, to plaintiff, Harry Gamburg, or against his one-half interest in and to Lots 4, 5, and 6 of Block 7 of the Race Track Addition to the City of Alexandria, Louisiana, as shown on that certain plat recorded in Plat Book 2, Page 151, of the Records of Rapides Parish, Louisiana.
It is further ordered, adjudged and decreed that a mandatory injunction issue herein commanding, directing and ordering the City of Alexandria, W. H. Lambdin, Commissioner of Streets, and Charles W. Cook, Acting City Engineer, their agents, servants and employees, to remove from North 18th Street the curb and gutters surrounding the circle extending from the west side of said street and extending eastward across the same near its intersection with Bolton Avenue and that curb and gutter in said Street surrounding the traffic island located partially thereon.
It is further ordered, adjudged and decreed that the defendants, City of Alexandria through its governing authority; W. H. Lambdin, Commissioner of Streets, and Charles W. Cook, Acting City Engineer, proceed in the manner and form prescribed by law, and, after compliance therewith, to pave the remaining unpaved portion of North 18th Street from Rapides Avenue to its intersection with Bolton Avenue, as petitioned for, and particularly that portion surrounding which the aforesaid curb and gutter have been ordered removed.
It is further ordered, adjudged and decreed that the defendants pay the cost of the stenographer's fee.
Reversed and rendered.