FOURNET, Justice.
 

 The Progressive Investment' Corporation filed an intervention in the liquidation of the Hibernia Bank & Trust Company, to be recognized as a privileged creditor' in the sum of $23,525.82 and to be paid’ by preference and priority over all other creditors of the bank by virute of the provisions of Act No. 63 of 1926, alleging that it placed with the bank, as its agent, for collection and remittance to it as principal, a check payable to the order of the corporation, for said amount, drawn by the Mutual Life Insurance Company of New York on the First National Bank of New York.
 

 The liquidators filed an answer, denying that the intervener placed the check for collection and averred that the item in question was deposited with intervener’sunrestricted indorsement; that its account was immediately credited with the amount thereof, and that therefore it is not entitled to a preference under the provisions of Act No. 63 of 1926.
 

 The judge of the district court rendered judgment in favor of intervener for the amount prayed for, subject to certain credits, with recognition of a privilege, and from that judgment the liquidators of the Hibernia Bank & Trust Company have appealed.
 

 The relevant part of Act No. 63 of 1926, upon which intervener claims a privilege, is as follows:
 

 “When any bank receives as agent * * * for collection and remittance or delivery to its principal and
 
 not for deposit
 
 any * * * evidence of indebtedness, or other instrument, and collects or realizes any money on the same,
 
 and has not deposited same to the credit of said principal,
 
 the principal shall have a privilege on all of the property and assets of said agent bank for the amount so col
 
 *859
 
 lected or realized, by said agent bank. * * *” (Italics ours.) Section 1.
 

 The record shows that intervener’s president, Mrs. Saenger, deposited the item in controversy and the corporation’s account was immediately credited with the full amount by the bank; that at the request of intervener’s president, $1,000 thereof was placed to intervener’s credit in its savings account; that intervener checked against the account on the same day for the sum of $501, and that a day later, or the first of March, intervener again checked against the account for the sum of $520.
 

 The record also discloses that intervener, for a number of years, had a checking and a savings account with the bank, and on the 27th day of February, 1933, when the check in question was deposited, its checking -account was overdrawn in the sum of $3.08 and there was a small balance of $4.12 in its savings account.
 

 Counsel for intervener, ■ however, contend that it was their client’s intention to leave the check with the bank, as its agent, for collection and remittance, and that the withdrawals above mentioned were to be considered as overdrafts.
 

 The testimony of intervener’s president as to its
 
 intention
 
 with regard to the disposition of the check, is very indefinite, as will appear from an excerpt of her testimony on direct examination as follows:
 

 “Q. Was it or not your understanding that these amounts that you withdrew from the bank, after placing this check for collection, would result in overdrafts until the collection on that check could be effected? A.
 
 Why, no.
 

 “Q. Well, did you consider that you had placed that check there to credit, against which you could withdraw, and that it was a deposit for that purpose? A. Well, it couldn’t have been when I couldn’t get the money.
 

 “Q. Then, did you understand the first question I put to you? In other words—
 

 “The Court: If you don’t understand it, Mrs. Saenger, don’t hesitate to say you don’t.
 

 “A. Well, Judge,
 
 it wasn’t discussed one way or the other.
 
 I mean, I didn’t — I knew I had the money and that’s all.” (Italics ours.)
 

 Mrs. Saenger’s testimony is corroborated by Mr. Walt, who was in charge of the Holmes Store Branch of the bank and handled .the transaction for the bank, as appears from an excerpt of his testimony on the subject as follows:
 

 “Q. What did she do with the check? A. Mrs. Saenger handed the check to me with her deposit slip.
 

 “Q. I show you a document and ask you if you can identify that? A. I am quite certain that that is Mrs. Saenger’s handwriting.
 

 
 *861
 
 “Q. And she handed you the check along with this deposit slip? A. Yes sir.
 

 “Q. Mr. Walt, was that check taken for collection or was it taken for credit? A.
 
 I do not believe there was any mention made as to how the check was going to be handled; that is, that it would be taken for collection.
 
 Mrs. Saenger asked me if it would be possible to withdraw a thousand dollars and place it in a savings account, which I permitted Mrs. Saenger to do.
 

 “The Court: You took it out of one pocket and put it in the other one?
 

 “Mr. Waguespack:
 
 Q. In other words, this check was credited to her account, was it not?
 
 A.
 
 That’s correct.”
 
 (Italics-ours.)
 

 From the evidence, it appears that intervener wanted to invest the proceeds of the check in question. Its president, Mrs. Saenger, consulted her broker on that matter and also Mr. Walt. ■ The former advised her to wait for better market conditions, while the latter said that he would prefer not to advise her because of the condition of the market. She seemed to be undecided as to what investments to make with the funds; she told Mr. Walt that some one advised her to invest in government bonds and asked him what he thought of it. Her own broker advised her to wait about ninety days .before investing the money. And while it is evident that intervener wished to invest these funds, the record is barren as to
 
 when or
 
 where the investment would be made, except the $1,000 which was deposited in the savings account. There is nothing
 
 in
 
 the record indicating that- the proceeds of the two $500 checks were. invested. The
 
 deposit
 
 was not inconsistent with intervener’s intention to invest.
 

 “In this state it is well settled that privileges are granted only in pursuance of law and not from considerations of equity, and that the one who asserts a privilege has the burden of establishing it.” In re Liquidation of Canal Bank & Trust Co., Intervention of John F. Clark & Co., 181 La. 856, 160 So. 609, 616.
 

 After a careful review of the record, we are of the opinion that intervener has failed to discharge that burden by a fair preponderance of the evidence. On the contrary, we think that the preponderance of the evidence is to the effect that the check was "indorsed in blank by intervener, received by the bank
 
 for deposit
 
 and intervener’s account was immediately credited for the full amount thereof, with the right to check against the deposit. We are fortified in this view by the fact that the deposit slip was prepared in the handwriting of the president of intervener and was made by her on the regular deposit slip, and that she, when asked whether or not the check had been placed with the bank for credit, against which intervener could draw checks, testified that
 
 "it wasn’t discussed one way or the other.”
 
 Furthermore, the physical facts in the case plainly show that inter
 
 *863
 
 vener had been given immediate credit on its account and had the right to withdraw the' funds, because that right was actually exercised by the withdrawals on February 27, 1933, and also on March 1, 1933.
 

 The evidence shows, and it is not disputed, that since the institution of the liquidation proceedings, the intervener has been paid all of its available balance as liquidated dividends, and that there now, remains restricted the sum of $11,643.21.
 

 For the reasons assigned, the judgment of the district court is annulled and set aside, and it is now ordered, adjudged, and decreed that there be judgment in favor of the Progressive Investment Company, Inc., and against J. S. Brock, state bank commissioner, R. N. Sims, special agent, and J. Edward McGuire, liquidator of the Hibernia Bank & Trust Company, in the full sum of $11,643.21, subject to the credit of such amounts and liquidating dividends that may have been paid since the filing of this intervention, recognizing intervener as an ordinary creditor, to be paid in due course of the liquidation proceedings; intervener and appellee to pay the costs of appeal; all other costs to be paid by defendants and appellants.