HAMLIN, Justice.
The question herein presented for our determination is whether a paving lien can be asserted against a taxpayer’s property (which property abuts the involved paved street) where the petition for paving did not comply with pertinent statutory law, LSA-R.S. 33:3381 through 33:3391.
*337 On April 27, 1954, some owners of property abutting upon St. James Street from Seventh Street to Tenth Street in the City of Alexandria petitioned the Commission Council of the City of Alexandria to cause the paving of St. James Street between designated points with cement concrete together with necessary concrete curb and gutter and drainage structures; the work to be done and paid for in accordance with the ten-payment plan. Among the eight signatures appearing on the petition were the following :
Property Frontage Signatures.
106.66 ft.Chester Gonzaque by Mattie Gonzaque
106.66 ft.Rose of Sharon Baptist Church J. W. Daniels
106.66 ft.Mary Francis Berry Foster by Louis Berry
On June 4, 1954, the Acting City Engineer, Charles W. Cook, wrote to the Commission Council, City of Alexandria, stating that the petition had been checked and found to be signed by 52.84% [1] of the abutting property owners. The paving work was completed and after its acceptance (January 4, 1955), Local Assessment Ordinance No. 616 was adopted by the City Council. The ordinance assessed the various property owners with their respective portions of the cost of the paving. Under Assessments Nos. Thirteen and Fourteen thereof Theus M. Shevnin, owner of Lots Nos. One and Four of Square 68 of the City of Alexandria, having a frontage of 106.66 feet each on St. James Street, was assessed the sum of $2,175.78 as his portion of the cost of paving — $1,087.89 bearing against each one of his lots. The assessment ordinance was recorded, and it operated as a lien and privilege in favor of the City of Alexandria for the amount of the paving due against the property affected thereby.
Shevnin, who had not signed the petition for paving, made no payment under the assessment; the present suit was brought for an in rem judgment recognizing the alleged lien and privilege of the City of Alexandria for the amount of the assessment, together with interest and attorney’s fees. Defendant Shevnin answered, averring that the petition for. paving was null and invalid because it had not been signed by more than 50% of the abutting property owners as required by LSA-R.S. 33:3381 through 3391. He further averred that the petition had neither been signed nor executed by him, and that as a consequence the City of Alexandria, plaintiff, had no legal right to enter into a contract for the paving of St. James Street.
From a judgment of the trial court, which held that Assessments Nos. 13 and 14 of Local Assessment Ordinance No. 616 of the City of Alexandria were null, void, and of no effect, and which ordered and authorized that said assessments be cancelled and erased in full from the mortgage records of Rapides Parish, Louisiana, the City of Alexandria appealed.
In his reasons for judgment, the trial judge stated that he found no evidence of record which tended to show that the signatures of Mattie Gonzaque, J. W. Daniels, and Louis Berry, supra, were authorized. He said, “In the case of the property belonging to the Estate of Chester Gonzaque the uncontradicted testimony of Murel Gonzaque shows without any question that Mattie Gonzaque had no pretense of authority to sign for the Estate of Chester Gonzaque * * *. Likewise, J. W. Daniels, is not shown to have had any authority to sign for the Rose of Sharon Baptist Church nor is Louis Berry shown to have any authority whatsoever to sign for the minor, Mary Francis Berry Foster.”
We have carefully reviewed the record and are in complete accord with the findings *338 of the trial judge that the evidence does not disclose any authorization for the three signatures, supra, and that without such signatures the paving petition was not signed by the owners of more than 50% of the lineal foot frontage.[2] Since the City of Alexandria does not seriously deny the correctness of the findings of the trial judge, we do not find it necessary to review the facts supporting the conclusions.
Appellant contends that even if it be conceded that those who signed for Gonzaque, Foster, and the Church did not have authority to do so, it is perfectly clear that the owners are satisfied and have acknowledged the authority of those who signed and have ratified their action since they have paid or are paying their pro rata of the cost of the paving.[3] Appellant further contends that the paving statutes, supra, were substantially followed, and that if any error was committed it was only an informality or irregularity which could not render the assessments of defendant’s property null and void. It argues that after the City of Alexandria entered into the paving contract and work was commenced, defendant was aware of such work and did not enjoin its continuance and should not now be permitted to avoid paying what is justly due by him. Town of Ruston v. Adams, 9 La.App. 618, 121 So. 661, 664.[4]
We must determine herein whether a deficiency of signatures in the paving petition is a jurisdictional question; that is, whether the City of Alexandria was without jurisdiction to initiate the proceedings for paving St. James Street, except under the authority of a petition which had been duly signed by the required number of abutting property owners.
In Louisiana it is elementary that all statutory liens are stricti juris and that a party claiming the benefit of one must show that he has complied strictly with the provisions of the law which created it. Hicks v. Tate, La.App., 7 So.2d 737; Moore Steel, Inc. v. Wright’s Succession, La.App., 79 So.2d 118; Patterson v. Lumberman’s Supply Co., Inc., La.App., 167 So. 471. “ * * * It is well recognized in our jurisprudence that liens and privileges are stricti juris and that the party who claims or asserts one must be able to put his finger on the law under which it is granted. * * * ” Grand Lodge Knights, Ladies Auxiliary, Juveniles of Honor of America v. Charles, 224 La. 785, 70 So.2d 684, 686; Blasingame v. Anderson, 236 La. 505, 108 So.2d 105. Privileges are granted only in pursuance of law and not from considerations of equity; one who asserts a privilege has the burden of establishing it. In re *339 Liquidation of Canal Bank & Trust Co., 181 La. 856, 160 So. 609, 99 A.L.R. 473; In re Liquidation of Hibernia Bank & Trust Co., 182 La. 856, 162 So. 644. See, Boone v. Brown, 201 La. 917, 10 So.2d 701.
“Laws that provide for the coming into existence of liens and privileges are strictly construed, and where it is provided that they may arise only after the performance of certain definite acts by a governing authority, strict adherence to such requirements is mandatory as a condition precedent thereto. * * * ” City of Natchitoches v. Kile, La.App., 54 So.2d 834, 836. See, dissertation in Graeme Spring & Brake Service v. De Felice, La.App., 98 So.2d 314; Thompson v. City of Alexandria, La. et al., La.App., 77 So.2d 584; LSA-Civil Code, Article 3185.
The instant proceeding is in rem and asserts a statutory lien. LSA-R.S. 33 :3387. We believe that under the above jurisprudence the question is jurisdictional; a strict compliance with the law creating the lien was mandatory. Cf. State ex rel. Higgins v. Aicklen et al., 167 La. 456, 119 So. 425. In the early case of Grasser Contracting Co. v. Richardson, 147 La. 612, 85 So. 609, 610, this Court held:
“As the property owners’ petition in this case was not signed by 52 per cent or more of the owners of property on Lowerline street, it was illegal, null, and void, and could not serve as a foundation for the contract here sued upon, particularly as defendant in the cause filed a timely protest against entering into said contract.
“Plaintiff in this court has filed a plea of estoppel, based on the allegations that defendant was fully aware of the contemplated paving of the street fronting his property by the physical conditions of said street, anterior to his protest and by the published petition of the minority of the property holders; and it urges that he cannot now be heard to charge irregularities in the proceeding.
“The illegality of the petition (not having been signed by 52 per cent, of the property owners on Lowerline street) was brought to the knowledge of the city of New Orleans, and, it is presumed, to the knowledge of the plaintiff, prior to the entering into of the contract between the city and plaintiff; and,' as that defect was a radical one, defendant would have the right to urge it in defense of any claim under the contract. Act 219, 1914, p. 416, although passed in July, 1914, after the date of the contract, specially provides that—
“ ‘The plea of estoppel shall never be allowed by the courts of this state in matters of local or municipal assessments where there are radical defects in the proceedings leading up to such local assessments.’ etc.” [5] See, LSA- *340 R.S. 33:2843; Hinkle v. McGuire, 190 La. 397, 182 So. 551.
We do not find that the above jurisprudence has been overruled; we are .constrained to follow it herein. Where the petition or consent of the property owners to be assessed is required by statute as a .condition precedent to the making of an improvement, compliance with such petition is necessary, Gamburg v. City of Alexandria, 227 La. 687, 80 So.2d 372, La.App., 85 So.2d 276. Since compliance with the petition is necessary, it follows that the petition for paving must be in strict compliance with the law. We conclude that the petition herein was void as to Shevnin; -therefore, it was not incumbent upon him -to file a suit to enjoin the entering into the contract for the laying of the concrete street. It must be conceded that whatever -is done in violation of a prohibitory law is void (Article 12, LSA-C.C.), and where an act is void or of no effect whatever, it -is incapable of being made so. State ex rel. White v. Mason, 17 La.App. 504, 133 So. 809-811; 66 C.J.S. Nullity p. 984; Sonnier v. Fris, 220 La. 1085, 58 So.2d 393; see, also, Kelly v. Kelly, 131 La. 1024, 60 So. 671, and cases therein cited. Under -the circumstances of the instant case, the doctrine of estoppel as to Shevnin is not .applicable. In view of our findings, supra, -the so-called principle of “Ratification” by -the other property owners is not involved.
Numerous authorities from other jurisdictions have been cited by counsel in brief .and by the trial judge in his reasons for judgment. Hillsborough County et al. v. De Sear, 120 Fla. 317, 162 So. 703; Simmons v. Fessenden, Florida, 111 Fla. 83, 149 So. 21; 95 A.L.R. 112; City of Bartlesville v. Holm, 40 Okl. 467, 139 P. 273, 9 A.L.R. 627; McQuillin, “Municipal Corporations,” Vol. 14, Sec. 38:193 et seq.; “Municipal Law,” Charles S. Rhyne, Chapter 29, “Special Assessments.” These authorities are not in agreement, but in view of our findings that the instant lien is stricti juris and that there should have been a strict compliance with the law creating it, we see no need for reviewing them.
Appellant alternatively prays that in the event this Court feels that it was the duty of the City to show that those signing the paving petition were authorized to do so even though defendant did not raise this question in his pleadings and did not show any lack of authority of those signing, the case should be remanded for the taking of evidence on this question. We have reviewed the record and find that the trial judge was correct in his opinion that the evidence was admissible under defendant’s g-eneral and specific, denials contained in his answer. The trial judge, in an effort to be as fair as possible to the plaintiff, the City of Alexandria, offered to grant a continuance to the plaintiff to further prepare itself regarding the three above ownerships if in fact the City was taken by surprise. The trial judge stated in his written reasons, “The plaintiff apparently was not taken by surprise because no such continuance was requested.”
For the reasons assigned, the judgment of the trial court is affirmed.

. The evidence shows that twenty-two persons owned property on the portion of St. James Street involved. The entire footage was approximately 1279 feet; one-half of this footage would be approximately 639 feet; the property represented by the signatures, supra, is 319.98 feet.

.“Municipalities, except New Orleans, having a population exceeding one thousand, and all incorporated parish seats may pave, gravel, macadamize, resurface, repair, or otherwise improve their streets and alleys and curbing, or any part of them one block or more in length within its corporate limits and may levy and collect special taxes or local assessments on the property abutting the street, curbing, alley, or sidewalk for the purpose of defraying the cost of the work. The costs shall include all expenses necessary in the performance of the work.” LSA-R.S. 33:3381.
“In lieu of the above and upon the written petition of the owners of more than fifty per cent of the lineal foot frontage of the property abutting on any street or alley, the entire costs of the improvements shall be paid by the owners of real estate abutting on the street or alley to be improved, according to the frontage of the property owned by them, * * *” LSA-R.S. 33:3385.

. The evidence is to the effect that all property owners other than Shevnin have paid or are paying their paving assessments.

. Therein it was stated: “Abutting owners, after receiving the benefits of said improvements, are estopped to complain of irregularities in the proceedings, and, where paving ordinances are not attacked prior to the performance of the work, they cannot bo attacked in a suit to enforce the paving liens. * * * ” The irregularity complained of was that the petition presented to the Council asked that South Line Street be paved, whereas, the published notice specified South Line Avenue.

. In substance, the following factual finding of the trial judge in the instant ease is correct:
“The factual situation in the present case pertaining to the issue of estoppel is that the defendant, Thous Shevnin, according to his own testimony first learned of the proposed paving from several of the other owners who told him that the petition was being circulated. This was two or three weeks before the work was actually begun. Mr. Shevnin testified that he immediately went to the City Hall, examined the petition and found the questionable signatures which have already been discussed above. He then went to see his attorney, Mr. Nau-man Scott, and had him check the petition and defendant was advised by his attorney that the petition was not properly signed. Mr. Shevnin then went to see the Mayor of the City of Alexandria and told the mayor that he objected to the petition. The Mayor sent him to see the City Engineer, Mr. Cook, who in turn sent defendant to see the City Attorney, Mr. Peterman, who in turn sent the defendant to the Vance Abstract and Title Company which concern had prepared the certificate of ownership *340 of abutting property owners. From the testimony of the defendant, as -well as the other witnesses in this case, ■it is apparent that some two or three weeks before the work actually began ■the defendant went to the above named city officials to investigate and he advised them that he would contest the matter. The defendant was advised both by the mayor and by the city attorney that the contract for the paving had already been let and that there was nothing which the city could do to stop the proceedings. After being so advised the defendant did nothing more. Accordingly, in due course the paving was completed by the contractor, accepted by the City, the assessments were recorded in the mortgage records and on defendant’s failure to pay, this suit was Sled on the lien.”