AYRES, Judge.
This action in the nature of a concursus proceeding was instituted by plaintiff, National Surety Corporation, as surety on a lien bond executed in connection with the sale and mortgage of a residence erected by defendant Colquitt on a lot owned by him and sold to Guilford G. Rudolph and his wife, Catherine G. Rudolph. Made defendants in addition to Colquitt, the receiver or trustee of his estate in bankruptcy, and the Rudolphs and their mortgagee, Home Federal Savings and Loan Association, were eight certain claimants to liens upon the property by virtue of their having furnished materials and supplies for use in the construction of the improvements thereon.
Under motions by plaintiff, National Surety Corporation, and the defendants Rudolph, predicated upon pleas of prescription and of peremption, the trial court found the liens had not been timely filed. Hence the motions were sustained, and the funds deposited by plaintiff in the registry of the court, less the accrued court costs, were ordered returned to plaintiff. At the request of the Rudolphs, the liens were ordered canceled and erased from the mortgage records. From the judgment thus rendered and signed, the lien claimants appealed, as did plaintiff from that portion of the judgment directing that the costs be paid out of the funds deposited by it in court.
Colquitt, on February 12, 1968, was the owner of Lot 329, Unit 4 of Spring Lake Estates Subdivision of the City of Shreveport. On that date, an agreement was reached between Colquitt and the Rudolphs for the construction of a residence on the aforesaid lot according to certain plans and specifications. It was agreed that after the residence had been so constructed, Colquitt would sell the lot and residence to the Rudolphs for a price of $43,980.
No contract or bond with reference to this contract was recorded. The residence was completed on or before December 23, 1968, when the Rudolphs moved in. Minor adjustments or corrections in the construction were made, however, during February of 1969. On May 5, 1969, Colquitt deeded the property and improvements to the Ru-dolphs who, in turn, deeded the property to the Home Federal Savings and Loan Association which reconveyed the property to the Rudolphs, retaining a vendor’s lien on *892 the property. In the same instrument, the Rudolphs granted unto Home Federal a special mortgage to further secure a loan of $30,000. Colquitt furnished a lien bond in the sum of $8,000 with National Surety Corporation as surety. The Rudolphs, in an authentic act denominated an “Affidavit of Acceptance,” made reference to the agreement entered into between them and Colquitt and declared:
“ * * * that the said buildings and improvements were entirely completed and accepted on or about May 5, 1969; and that no material or labor has been furnished by any person on said buildings and improvements since said date of acceptance.”
The documents referred to were executed and filed for record in proper sequence on May 5, 1969. None of the liens herein concerned were filed for record within 60 days of the completion of the improvements on the property, that is, within 60 days of the furnishing of the last materials or the performance of the last labor in connection with the project. Lien claimants, however, relied upon the date of the filing for record of the Rudolphs’ aforesaid statement as to the completion and acceptance of the residence as the date for the commencement of the running of the period allowed for the filing of liens. Whether claimants may rely upon the filing of this instrument for the commencement of the period for the filing of liens requires an interpretation of the applicable statute, LSA-R.S. 9:4812, as amended by Act 405 of 1966, the pertinent provisions of which read as follows:
“When the owner, or his authorised agent, undertakes the work of construction, improvement, repair, erection, or reconstruction, for the account of the owner, for which no contract has been entered into, or when a contract has been entered into but has not been recorded, as and when required, the owner or his authorised agent may file an affidavit that the work has been completed, then any person furnishing service or material or performing any labor on the said building or other work may record in the office of the clerk of court or recorder of mortgages in the parish in which th,e said work is being done or has been done, an affidavit of his claim, which recordation, if done within sixty days after the date of the affidavit of completion or if no affidavit of completion is filed within sixty days after the date of the last delivery of all material upon the said property or the last furnishing of services or the last performance of labor upon the same, by the said furnisher of material or services or the said laborer, shall preserve a privilege upon the building or other structure and upon the land upon which it is situated, in favor of any such person who shall have furnished service or material or performed any labor in connection with the said work or improvement, as his interest may appear. The said claim, recorded as aforesaid, shall preserve a privilege against the property for a period of one year from the date of its rec-ordation, * * (Emphasis supplied.)
The statute is clear that when an owner or his authorized agent undertakes any of the work specified therein such owner or his authorised agent undertaking the work may file, in the appropriate records, an affidavit that the work undertaken has been completed.
The owner who undertook this construction on his own account was Colquitt. There is no showing that the work was undertaken through any authorized agent of Colquitt. Their relationship which continued, as originally contemplated, was one of vendor and vendees. The Rudolphs were not agents of Colquitt. In the language of the statute, it is the owner or his authorized agent who “undertakes the work of construction, improvement, repair, erection, or reconstruction” of the improvements on the property who may execute and file for record an affidavit of acceptance of the *893 work. Thus, the statute, a portion of which is quoted above, limits the making of the affidavit as to completion of the work to "the owner or his authorized agent ” who "undertakes the work” contemplated. No such affidavit has been made by Colquitt or by anyone shown to have been his authorized agent who undertook the construction of the residence.
As pointed out in American Creosote Works v. City of Natchitoches, 182 La. 641, 162 So. 206, 207 (1935):
“The law is clear that statutes in derogation of common rights such as those creating civil penalties and liens and privileges are to be strictly construed and are not to be extended by analogy or implication, or through considerations of equity.”
Fruge v. Muffoletto,
242 La. 569, 137 So.2d 336 (1962);
McGee v. Missouri Valley Dredging Co., 182 So.2d 764 (La.App., 1st Cir. 1966 —writs denied);
Construction Eng. Co. of La. v. Village Shopping Center,
168 So.2d 826 (La.App., 2d Cir. 1964 —writs denied).
Thus, all statutory liens and privileges are stricti juris, and a party claiming the benefit of a lien or privilege must show that he has strictly complied with the provisions of the law which created it.
City of Alexandria v. Shevnin,
240 La. 983, 126 So.2d 336 (1961).
Statutes which create liens and privileges and give them priority over certain conventional contractual rights, such as those established by recorded mortgages, are stricti juris, and failure to meet every requirement of the statute renders the purported lien invalid.
National Bank of Commerce in New Orleans v. Justice,
212 So.2d 711 (La.App., 4th Cir. 1968).
Inasmuch as privileges and liens are stricti juris, they and the statutes creating them must be strictly construed. Any ambiguity in the statute must be construed against the one claiming the privilege.
Econo-Car International, Inc. v. Zim-mermann,
201 So.2d 188 (La.App., 4th Cir. 1967).
Thus, again, as privileges must be strictly construed, if there is ambiguity in the statute under which a privilege is claimed, an interpretation most favorable to the one against whom the privilege is claimed must be adopted and all doubt resolved against the one claiming the privilege.
Shreveport Armature & Electric Works v. Harwell,
172 So. 463 (La.App., 2d Cir. 1937);
Bolinger Gain-Yay, Inc. v. Harwell,
172 So. 471 (La.App., 2d Cir. 1937).
The statement made by the Ru-dolphs, as heretofore noted, on which claimants rely as fixing the beginning of a 60-day period within which liens may be filed, has no foundation in the statute. As the Rudolphs were not the owners of the property nor the authorized agents of the owner undertaking the construction of the residence, the filing of liens not within the statutory period of 60 days, dating from the last performance of labor or the last furnishing of materials, is ineffective.
Moreover, it appears appropriate to point out that the Rudolphs purchased the property on the faith of the public records. There were no liens of record at that time, although the improvements had been completed for more than four months. Under these circumstances, it would appear inconceivable that the Legislature intended that the period for filing liens already expired might be revived to allow another 60-day period within which liens could be filed.
From the facts established in the record, to which we have referred, we conclude, as did the trial judge, that the purported liens *894 were not timely filed, and, hence, are ineffective as liens on the property.
With respect to plaintiff’s complaint that the trial court erred in assessing plaintiff with or directing that the costs be paid from the deposit made by it, which deposit, less the costs, was ordered returned to plaintiff, we think the court did err. The filing of these several purported liens provoked plaintiff to take this action rather than to eventually defend a multiplicity of suits, each involving a particular lien. Plaintiff, surety on the lien bond, succeeding in its contentions that the purported liens were not timely filed so as to constitute a lien upon the property, should not be penalized by being required to pay the costs of the lien claimants who were unable to establish the verity and validity of their claims. These costs are equitably assessable against these unsuccessful lien claimants. LSA-C.C.P. Art. 2164 provides, in part, that the appellate court “may tax the costs of the lower or appellate court, or any part thereof, against any party to the suit, as in its judgment may be considered equitable.”
These principles have like application to the Rudolphs who were also successful in their contentions and obtained an order directing the cancellation of the purported liens against their home.
For the reasons assigned, the plaintiff, National Surety Corporation, is awarded judgment for costs against the unsuccessful lien claimants, namely:
Berg Mechanical, Inc.,
Central Wholesale Company, Inc.,
Dixieaire Air Conditioning Company, Inc.,
Stephenson Floor Covering Company, Inc.,
Industrial Roofing & Sheet Metal Works,
Decorators-Builders Hardware Company, Inc.,
Dixie Tile & Marble Company, Inc., and Cahn Electric Company, Inc.,
and, as thus amended, the judgment appealed is affirmed.
Amended and affirmed.