627 So.2d 144 (1993)
METROPOLITAN ERECTION COMPANY, INC.
v.
LANDIS CONSTRUCTION COMPANY, INC. et al.
No. 93-C-1017.
Supreme Court of Louisiana.
November 29, 1993.
*145 Lloyd N. Shields, Avis M. Russell, Denise C. Puente, Simon, Peragine, Smith & Redfearn, New Orleans, for applicant.
Harold E. Dearie, II, Dearie & Killian, Metairie, for respondent.
LEMMON, Justice.[*]
This is an action by a subcontractor against the general contractor and its surety to recover the balance due the subcontractor for work performed under a construction contract. The subcontractor did not file the action within the one-year period provided in La.Rev.Stat. 9:4813 for instituting an action asserting its claim against the surety. The issue is whether the general contractor's acknowledgment of the debt extended the period for the filing of the subcontractor's claim against the general contractor's surety.
Landis Construction Company, Inc. entered into a contract with MART-Perez, Inc. to construct an aerial transit crossing the Mississippi River for the 1984 World's Fair. United States Fidelity and Guaranty Company (USF & G) issued a payment bond as surety for the contract. The notice of the contract was duly recorded.
Landis subcontracted with Metropolitan Erection Co., Inc. (MECO) to erect the steel and pre-cast bracings for the aerial crossing. The Landis-MECO subcontract contained the provision that Landis would pay the final payment of the contract price to MECO when Landis received payment from MART-Perez.
MECO performed completely its obligations under the subcontract, and Landis completed the construction of the aerial crossing. Landis and MART-Perez filed a notice of termination of the work on June 20, 1984.[1] The facility was used by MART-Perez *146 during the World's Fair from May through November of 1984. However, MART-Perez failed to pay Landis over $800,000 under the general contract, and there was an unpaid balance of almost $88,000 due by Landis to MECO under the subcontract.[2] According to the stipulation between the parties, Landis continually acknowledged its debt to MECO, but advised it would not pay until MART-Perez paid Landis.
MECO filed the present action against Landis and USF & G on September 13, 1985. Defendants answered and filed a third party demand against MART-Perez.
A 1987 trial date was continued on joint motion, awaiting a decision of this court in Southern States Masonry, Inc. v. J.A. Jones Constr. Co., 507 So.2d 198 (La.1987). In the Southern States87063249 case, this court held that the "pay when paid" provision of a construction contract (similar to the one in the present case) was a term of the contract specifying the time for payment and not a condition of the general contractor's obligation to pay. Therefore, the obligation of the general contractor to pay the balance of the subcontract was not contingent on the general contractor's receipt of payment from the owner on the general contract.
After the Southern States opinion, Landis filed a petition in bankruptcy. The case then proceeded to trial against USF & G, who raised the issue that the claim was prescribed. The parties submitted the matter on the basis of stipulations and briefs.
The trial court rendered judgment in favor of MECO in the amount due under the subcontract, reasoning that it was inequitable to allow Landis to file the certificate of termination of work without notice to MECO and thereby trigger the beginning date of MECO's period for filing suit, while Landis was claiming at the same time that MECO's claim would not mature until the owner paid Landis under the general contract.
The court of appeal affirmed. 613 So.2d 1147. Citing Flowers v. United States Fidelity and Guaranty Co., 381 So.2d 378 (La. 1980), the court held that Landis' repeated acknowledgments of the debt interrupted prescription and that the action was therefore timely.
We granted certiorari to review the decisions of the lower courts. 620 So.2d 821.
Although MECO's claim against Landis is not presently before the court, we note that the MECO-Landis claim was based on a contract, subject to a ten-year prescriptive period. However, there was no contractual relationship between MECO and USF & G, and that claim was based on a special statute.
The Private Works Act, La.Rev.Stat. 9:4801-42, provides the method for contractors, laborers and suppliers of materials to secure and preserve a privilege, according to the circumstances, against the owner, the property and/or the general contractor's surety. As to the time for filing the claim, La.Rev.Stat. 9:4822A provides in part:
A. If a notice of contract is properly and timely filed in the manner provided by R.S. 9:4811, the persons to whom a claim or privilege is granted by R.S. 9:4802 shall within thirty days after the filing of a notice of termination of the work:
(1) File a statement of their claims or privilege.
La.Rev.Stat. 9:4813, providing for the liability of the surety, states in Subsection E:
E. The surety's liability, except as to the owner, is extinguished as to all persons who fail to institute an action asserting their claims or rights against the owner, the contractor, or the surety within one year after the expiration of the time specified in R.S. 9:4822 for claimants to file their statement of claim or privilege.
In the present case, Landis and MART-Perez properly and timely filed the notice of the contract, but MECO did not file an action against the surety within one year of the expiration of the time for filing the statement of claim or privilege.[3]
*147 MECO first contends that the general contractor must notify the subcontractor of the filing of notice of termination of the work in order for Section 4822A's thirty-day period to commence. There is no such requirement in the Act. Moreover, there is no suggestion that the notice was filed prematurely or in bad faith. See La.Rev.Stat. 9:4822E(3)(a). Although a dispute existed between MECO and Landis whether payment on their contract was due at the time of filing, the filing of the notice was appropriate, and nothing prevented MECO from filing its claim and its suit to secure and preserve its privilege.
MECO further contends that Landis' continued acknowledgments of the debt interrupted prescription against both Landis and USF & G.[4] MECO relies on La.Civ.Code art. 3504, as amended effective January 1, 1984, which provides that "[w]hen prescription is interrupted against the principal debtor, the interruption is effective against his surety." MECO cites Dinon Terrazzo & Tile Co. v. Tom Williams Constr. Co., 148 So.2d 329 (La.App. 4th Cir.1963), in which the court applied former La.Civ.Code art. 3553[5] in a Private Works Act case and held that a timely suit by a subcontractor against the general contractor interrupted prescription against the general contractor's surety who had not been sued until after the period for filing the action had expired. Accordingly, MECO argues in the present case that an interruption of prescription against the general contractor, based on the general contractor's stipulated acknowledgment of the debt, is also effective against the surety.
In response, USF & G argues that La.Civ. Code art. 3504 is not applicable because the time for filing suit under the Private Works Act is a peremptive period which is not susceptible of interruption.
A peremptive period is a period of time fixed by law for the existence of a right, and the right is extinguished unless timely exercised within the period. La.Civ.Code art. 3458. On the other hand, liberative prescription is a mode of barring actions to enforce a legal right as a result of inaction for a period of time. La.Civ.Code art. 3447. The right is not extinguished when the prescriptive period expires without the filing of an action; enforcement of the right is merely barred unless the obligee fails to object or unless prescription was interrupted or suspended. Peremption, by contrast, may not be interrupted or suspended. La.Civ.Code art. 3461.
The determination of whether a period of time fixed by law is prescriptive or peremptive turns on whether the Legislature intended to bar the action or to limit the duration of the right. St. Charles Parish Sch. Bd. v. GAF Corp., 512 So.2d 1165 (La. 1987); Pounds v. Schori, 377 So.2d 1195 (La.1979). When the statute does not indicate in plain words that the period is one of peremption, the court must analyze the statute in its entirety and construe the statute with particular focus on whether the purpose sought to be achieved involves matters of public policy or other compelling reasons for absolutely extinguishing a right which is not promptly exercised. La.Civ.Code art. 3458, Revision Comment (c).
Peremption has been applied in actions of a public law nature, such as an action to contest a tax election where there is an obvious need for certainty as soon as possible. Guillory v. Avoyolles Ry. Co., 104 La. 11, 28 So. 899 (1900). The courts have also applied peremption where the public interest dictates against permitting suspension or acknowledgement, as in an action to disavow paternity. Pounds v. Schori, 377 So.2d 1195 (La. 1979).
*148 The Private Works Act does not expressly denominate the period for filing actions against the surety as a peremptive period.[6] La.Rev.Stat. 9:4813E does provide, however, that the surety's liability is extinguished unless the claim is filed within one year.
In order to facilitate construction of improvements, the Private Works Act grants to contractors and others the right to recover the costs of labors and materials from a party with whom there is no contract. That right is in derogation of common rights and must be strictly construed against those to whom the right is accorded. Louisiana Nat'l Bank of Baton Rouge v. Triple R. Contractors, Inc., 345 So.2d 7 (La.1977). Because the law grants a special right, there must be strict compliance with the provisions. City of Alexandria v. Shevnin, 240 La. 983, 126 So.2d 336 (1961).
The surety bond required by the Private Works Act is furnished by the general contractor to provide a source for payment of claims that the general contractor fails to pay, as well as to protect the owner and the owner's property from unpaid claims. The Legislature, in adopting the Act, granted a special right in favor of specified claimants, but limited the time for enforcing that right in the manner prescribed in the Act, after which the right becomes extinguished and passes out of existence. The Legislature clearly intended to extinguish in short order the special rights of those claimants who did not file their privileges and their actions within the specified time limitations. The Act thus balances the private interest in asserting claims against the public interest in limiting special rights.
We accordingly hold that a right against a surety under La.Rev.Stat. 9:4813E involves a period of peremption and becomes extinguished if not asserted within the period of limitation, which cannot be suspended or interrupted. Therefore, the provisions of La. Civ.Code art. 3504 regarding interruption of prescription against the surety are not applicable in this case.
We conclude that the Private Works Act which provides the sole basis for MECO's claim against USF & G also provides the period within which the right must be exercised or become extinguished. Therefore, USF & G's liability to MECO became extinguished when the claim was not filed within the one-year peremptive period provided in La.Rev.Stat. 9:4813E.
For these reasons, the judgments of the lower courts are reversed, and the action by Metropolitan Erection Co., Inc. is dismissed as to United States Fidelity and Guaranty Company.
NOTES
[*] Pursuant to Rule IV, Part 2, § 3, Dennis, J. was not on the panel which heard and decided this case. See footnote in State v. Barras, 615 So.2d 285 (La.1993).
[1] The Private Works Act, La.Rev.Stat. 9:4801-42, uses the term "notice of termination of the work," rather than notice of acceptance or notice of completion, as more nearly descriptive of the function of the notice. See La.Rev.Stat. 9:4822 cmt. (d).
[2] The total price of the subcontract, including change orders, was $173,137.
[3] Because the contract was properly recorded, the period for filing the privilege or lien was thirty days after the June 20, 1984 filing of the notice or termination of the work, or July 20, 1984. The deadline for filing an action against the surety was one year thereafter, or July 20, 1985, a Saturday. The time period therefore expired on July 22, 1985.
[4] Under La.Civ.Code art. 3464, "[p]rescription is interrupted when one acknowledges the right of the person against whom he had commenced to prescribe."
[5] The substance of former Article 3553 was adopted in the new Article 3504, which made no change in the law. See Official Revision Comment. The prior Article 3553 provided that "[a] citation served on the principal debtor, or his acknowledgment, interrupts the prescription on the part of the surety."
[6] By contrast, see La.Rev.Stat. 9:2772.